IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLARD MCGRUDER;** | ) |
| **BARBARA BUTTERFIELD;** | ) |
| **LILY VALENTIN;** | ) |
| **DEBORAH DEMURO:** | ) |
| **CARMEN RODRIGUEZ; and** | ) |
| **FACE TO FACE;** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| **STEVEN TERNER MNUCHIN,** as | ) |
| Secretary of Treasury; | ) |
| **CHARLES P. RETTIG,** as | ) |
| Commissioner of the Internal Revenue | ) |
| Service; | ) |
| **U.S. DEPARTMENT OF THE** | ) |
| **TREASURY**; | ) |
| **INTERNAL REVENUE SERVICE**; | ) |
| | ) **Civ. Action No.** |
| | ) **20-cv-04107** |
| Defendants. | ) |
| _____ | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................... 1

II.    STATEMENT OF FACTS ....................................................................... 4

    A.    Congress Passes the CARES Act Authorizing Immediate Relief
         Payments ........................................................................................ 5

    B.    Defendants Imposed Unreasonably Short Windows for Plaintiffs to
         Register their Dependent Children for EIP Payments ........................... 6

    C.    Hundreds of Thousands of People Who Are Entitled to EIPs for their
         Dependent Children Did Not Meet the Deadline to Register Dependents
         via the IRS's Complicated, Inaccessible, Confusing, Poorly Constructed
         and Ill-Publicized "Non-Filer Tool" ................................................ 11

    D.    Defendants Continue to Refuse to Provide EIP Payments for Federal
         Beneficiaries ................................................................................ 15

    E.    Defendants Have Injured Plaintiffs and other Low-Income Federal
         Beneficiaries By Refusing to Allow them to Receive EIPs For Their
         Dependent Children As Directed By Congress .................................. 16

III.    ARGUMENT ...................................................................................... 19

    A.    Plaintiffs are Likely to Succeed on the Merits. .................................... 19

         1.    Plaintiffs Are Likely to Succeed on the Merits of Their APA
               Claims Because Defendants' Action Denying Plaintiffs Access to
               Dependent EIPs Until 2021 Must be Set Aside as Arbitrary,
               Capricious, and Contrary to Law. ............................................ 20

               a.    Defendants' Press Releases Announcing the Defendants'
                    Final Decision to Deny Benefits are Final Agency Actions. ......... 20

               b.    Defendants' Actions—Which Delayed EIP Dependent
                    Benefits for Federal Beneficiary Non-Filers Who Could
                    Not Use the Non-Filer Tool Until 2021—are Contrary to
                    the Law. ........................................................................ 24

               c.    Defendants' Actions to Delay EIP Dependent Benefits for
                    Federal Beneficiary Non-Filers Who Could Not Use the
                    Non-Filer Tool Until 2021 are Arbitrary and Capricious .............. 25

d.    The Treasury Department via the IRS has Wrongfully Withheld Or Unreasonably Delayed Dependent EIPs. .................. 29

i.    Defendants' Decision To Delay Dependent EIPs is Unreasonable and Counter to the Context and Purpose of the CARES Act (Factors 1 & 2) ..................... 30

ii.    Further Delay Will Prejudice Plaintiffs (Factor 3) ........... 31

iii.    Allowing Plaintiffs to Obtain EIPs This Year Will Not Adversely Impact Agency Priorities (Factor 4) ......... 33

2.    Plaintiffs Are Likely to Succeed on the Merits of Their Due Process Claim Because Defendants' Systemic Delay in Processing Dependent EIPs Violates the Due Process Rights of Plaintiffs Who are SSI and SSDI Beneficiaries. ....................................... 34

a.    Plaintiffs' Interest in Receiving Their Dependent EIPs is a Property Interest Protected by the Due Process Clause. ............... 34

b.    Defendants' Limited Notice Violates Due Process. ...................... 37

c.    Defendants' Calculated Delay in Disbursing Dependent EIPs Violates Due Process. ............................................................ 38

d.    Plaintiffs' Due Process Rights Survive Mathews v. Eldridge Balancing. ....................................................................... 39

3.    Plaintiffs Are Likely to Succeed on the Merits of Their Equal Protection Claim. ...................................................................... 40

4.    Plaintiffs Are Likely to Succeed on the Merits of Their Rehabilitation Act Claim. ....................................................... 43

B.    Plaintiffs Are Likely to Suffer Irreparable Harm Absent the Requested Relief ........................................................................................ 44

C.    Defendants Will Not Be Harmed by Issuance of the Requested Injunctive Relief ........................................................................................ 46

D.    The Public's Interest Will Be Served by the Issuance of Requested Relief ......... 47

E.    Bond Should Be Waived ............................................................... 47

IV.    CONCLUSION .................................................................................. 48

# **TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ........................................................................................ 22

*Adams v. Freedom Forge Corp.,*
   204 F. 3d 475 (3d Cir. 2000) ........................................................................ 44

*Agua Caliente Band of Cahuilla Indians v. Mnuchin,*
   No. 20-CV-01136 (APM), 2020 WL 3250701 (D.D.C. June 15, 2020) ............... 31, 39, 45, 48

*Agua Caliente Band of Cahuilla Indians v. Mnuchin,*
   No. 20-CV-01136 (APM), 2020 WL 2331774 (D.D.C. May 11, 2020) ..................... 30, 31, 32

*Alessi v. Pa. Dep't of Pub. Welfare,*
   893 F. 2d 1444 (3d. Cir. 1990) ..................................................................... 37

*Am. Hosp. Ass'n v. Burwell,*
   812 F.3d 183 (D.D.C. 2016) ........................................................................ 24, 32, 39

*Am. Trucking Ass'ns, Inc. v. ICC,*
   659 F.2d 452 (5th Cir. 1981) ....................................................................... 22

*Atkins v. Parker,*
   472 U.S. 115 (1985) ...................................................................................... 38

*Beno v. Shalala,*
   30 F.3d 1057 (9th Cir. 1994) ....................................................................... 45, 46, 47

*Bolling v. Sharpe,*
   347 U.S. 497 (1954) ...................................................................................... 41

*Chu Drua Cha v. Noot,*
   696 F.2d 594 (8th Cir. 1982) ....................................................................... 45

*City of Cleburne v. Cleburne Living Ctr., Inc.,*
   473 U.S. 432 (1985) ...................................................................................... 41

*City of Phila. v. Sessions,*
   280 F. Supp. 3d 579 (E.D. Pa. 2017) ........................................................ 21, 26

*Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less in Penn Twp.,*
   768 F.3d 300 (3d Cir. 2014) ........................................................................ 20

*Crowley v. Local No. 82, Furniture & Piano,*
   679 F.2d 978 (1st Cir. 1982) ....................................................................... 48

*Cushman v. Shinseki*,
    576 F.3d 1290 (Fed. Cir. 2009) ........................................................... 35, 37

*Dep't of Commerce v. New York*,
    139 S. Ct. 2551 (2019) ......................................................................... 29, 30

*Dep't. of Homeland Sec. v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020) ................................................................ 26, 27, 28

*Ellender v. Schweiker*,
    550 F. Supp. 1348 (S.D.N.Y. 1982) ............................................................ 45

*Flanery v. Mathison*,
    289 B.R. 624 (W.D. Ky. 2003) .................................................................... 35

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) ....................................................................................... 39

*Garrett v. Puett*,
    707 F.2d 930 (6th Cir. 1983) ...................................................................... 38

*Goldberg v. Kelly*,
    397 U.S. 254 (1970) .................................................................................... 40

*In re Hardy*,
    787 F.3d 1189 (8th Cir. 2015) .................................................................... 35

*In re Pub. Employees for Envtl. Responsibility*,
    957 F.3d 267 (D.C. Cir. 2020) .................................................................... 31

*In re Vazquez*,
    516 B.R. 523 (Bankr. N.D. Ill. 2014) ........................................................ 35

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
    341 U.S. 123 (1951) .................................................................................... 38

*Kapps v. Wing*,
    404 F.3d 105 (2d Cir. 2005) ....................................................................... 37

*Karimushan v. Chertoff*,
    No. 07-2995, 2008 WL 2405729 (E.D. Pa. June 11, 2008) ..................... 31

*Kelly v. R.R. Ret. Bd.*,
    625 F.2d 486 (3d Cir. 1980) ................................................................. 37, 39

*Kraebel v. N.Y.C. Dep't of Hous. Pres. and Dev.*,
    959 F.2d 395 (2d Cir. 1992) ....................................................................... 39

*Littlefield v. Heckler*,
824 F.2d 242 (3d. Cir. 1987) ........................................................................... 37

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) ................................................................................. 42, 43

*Lopez v. Heckler*,
13 F.2d 1432 (9th Cir. 1983) ......................................................................... 47

*Machado v. Leavitt*,
542 F. Supp. 2d 185 (D. Mass. 2008) ............................................................ 39

*Marcello v. Regan*,
574 F. Supp. 586 (D.R.I. 1983) ...................................................................... 35

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
336 F.3d 1094 (D.C. Cir. 2003) ................................................................ 30, 31

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ............................................................................ 38, 39, 40

*Minard Run Oil Co. v. U.S. Forest Serv.*,
670 F.3d 236 (3d Cir. 2011) ...................................................................... 20, 24

*Moore v. Reese*,
637 F.3d 1220 (11th Cir. 2011) ..................................................................... 47

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ......................................................................................... 26

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
551 U.S. 644 (2007) ....................................................................................... 26

*NB ex rel. Peacock v. District of Columbia*,
794 F.3d 31 (D.C. Cir. 2015) ......................................................................... 34

*Ocean Cty. Landfill Corp. v. EPA*,
631 F.3d 652 (3d Cir. 2011) ........................................................................... 21

*Oil, Chem., & Atomic Workers Union v. OSHA*,
145 F.3d 120 (3d Cir. 1998) ........................................................................... 30

*Ortiz v. Eichler*,
794 F.2d 889 (3d Cir. 1986) ........................................................................... 38

*Prometheus Radio Project v. FCC*,
939 F.3d 567 (3d Cir. 2019) ........................................................................... 30

*Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*,
   740 F.2d 21 (D.C. Cir. 1984) ...................................................................... 32

*Research. & Action Ctr. v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) ...................................................................... 39

*Romer v. Evans*,
   517 U.S. 620 (1996) ...................................................................................... 41

*Schroeder v. Chicago,*
   927 F.2d 957 (7th Cir. 1991) ...................................................................... 39

*Sioux City Bridge Co. v. Dakota Cnty.*,
   260 U.S. 441 (1923) ...................................................................................... 41

*Smith v. Berryhill*,
   139 S. Ct. 1765 (2019) ................................................................................. 21

*Tallahassee Mem'l Reg'l Med.Ctr. v. Cook*,
   109 F.3d 693 (11th Cir. 1997) .................................................................... 47

*Temple Univ. v. White*,
   941 F.2d 201 (3d Cir. 1991)......................................................................... 48

*Torres v. Chater*,
   125 F. 3d 166 (3d. Cir. 1997)....................................................................... 37

*U.S. Dept. of Agric. v. Moreno*,
   413 U.S. 528 (1973) ...................................................................................... 41

*United States v. Vaello-Madero*,
   956 F.3d 12 (1st Cir. 2020) ......................................................................... 41

*Vill. of Willowbrook v. Olech*,
   528 U.S. 562 (2000) ...................................................................................... 41

*W. Coal Traffic League v. United States*,
   694 F.2d 378 (5th Cir. 1982) ................................................................ 21, 22

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ...................................................................................... 24

*Wilson v. Heckler*,
   622 F. Supp. 649 (D.N.J. 1985) ................................................................. 47

*Wright v. Califano*,
   587 F.2d 345 (7th Cir. 1978) ...................................................................... 37

*Zheng v. Gonzales*,
   422 F.3d 98 (3d Cir. 2005) ................................................................. 25

*Zobel v. Williams*,
   457 U.S. 55 (1982) ............................................................................ 41

**Statutes**

5 U.S.C. § 551 .......................................................................................... 20

5 U.S.C. § 702(2) ..................................................................................... 24

5 U.S.C. § 706(2) ..................................................................................... 20

26 U.S.C. § 6402(m) ................................................................................ 36

26 U.S.C. § 6428 .............................................................................. *passim*

29 U.S.C. § 705(20) ................................................................................ 43

29 U.S.C. § 794 ................................................................................. 20, 43

42 U.S.C. §§ 401-433 ................................................................................ 1

42 U.S.C. §§ 1381-1383f ........................................................................... 1

Pub. L. 116-136 ........................................................................................ 2

Pub.L. No. 110-185, 122 Stat. 613 ......................................................... 36

**Rules**

Federal Rule of Civil Procedure 65 ........................................................... 3

**Regulations**

31 C.F.R. § 17.160(a) .............................................................................. 44

**Other Authorities**

166 Cong. Rec. E339 .............................................................................. 25

166 Cong. Rec. S1929 ............................................................................ 25

166 Cong. Rec. S1968 ..................................................................... 2, 6, 25

166 Cong. Rec. S2007 ........................................................................................................... 5, 25

U.S. Gov't Accountability Off.,
   GAO-20-625 ..................................................................................................................... 17

# I.     INTRODUCTION

Plaintiffs Willard McGruder, Barbara Butterfield, Lily Valentin, Carmen Rodriguez, Deborah DeMuro, and Face to Face (collectively, "Plaintiffs") seek a preliminary injunction directing the Internal Revenue Service ("IRS"), the United States Department of the Treasury ("Treasury Department"), Secretary of Treasury Steven Terner Mnuchin, and Commissioner of the IRS Charles P. Rettig (collectively, "Defendants"), to immediately reverse their arbitrary and capricious decision to withhold Congressionally-mandated $500 per child emergency relief payments from Plaintiffs.

Plaintiffs, and millions of Americans just like them, are unable to work due to their age, or due to severe mental or physical disabilities, and receive Social Security retirement, survivor or disability benefits ("SSA"),[1] Railroad Retirement benefits ("RRB"),[2] Supplemental Security Income ("SSI"),[3] and/or Veterans Compensation and Pension benefits ("Veterans Benefits").[4]

---

[1] The Social Security Administration (the "SS Administration") administers several benefit programs pursuant to two different Acts—Title II (42 U.S.C. §§ 401-433) and Title XVI (42 U.S.C. §§ 1381-1383f). Under Title II, the SS Administration provides retirement benefits for people who are 62 or older and who have a sufficient work history, disability benefits (SSDI) to support people who can no longer work but who have a sufficient work history, and auxiliary benefits for survivors and spouses for these workers and retirees. The SS Administration also administers Supplemental Security Income (SSI) benefits pursuant to Title XVI for people who are elderly or have severe disabilities and do not have extensive work histories, discussed *infra* in footnote 3. In their communications and press releases, Defendants use the phrase "SSA" to refer to Title II beneficiaries only (i.e., people who receive Social Security retirement, disability (SSDI) and auxiliary benefits), and use "SSI" to refer to Title XVI beneficiaries. For consistency, Plaintiffs employ "SSA" and "SSI" in the same way.

[2] RRB consists of retirement and disability annuities for qualified railroad employees, spouse annuities for their wives or husbands, and survivor benefits for the families of deceased employees who were insured under the Railroad Retirement Act and provided by the Railroad Retirement Board.

[3] SSI is a means-tested cash benefit administered by the Social Security Administration available to adults 65 or older or individuals who are totally or partially blind or have medical conditions that prevent them from working more than a year. *Supplemental Security Income (SSI) Benefits*, SSA, https://www.ssa.gov/benefits/ssi/.

[4] These include disability, dependency and indemnity compensation, and pension payments to veterans and their families administered by the Department of Veterans Affairs.

Given their extremely low incomes, they are "non-filers" – individuals who do not, and are not required to, file federal income tax returns. They also are the parents, grandparents, or caregivers for a child or multiple children under age 17.

In response to the unprecedented health and economic crisis caused by COVID-19, Congress passed and, on March 27, 2020 the President signed, the CARES Act which provides for immediate Economic Impact Payments ("EIP"s) up to $1,200 per adult and $500 in emergency relief for each child under 17 years old.[5] Congress directed that Defendants "shall" deliver these EIPs "as rapidly as possible."

On April 20, 2020, the IRS and the Treasury Department abruptly announced that non-filers who receive SSA and RRB benefits needed to complete a complicated form on a newly created online portal (the non-filer tool), which was subject to glitches, **within 40 hours – by noon April 22, 2020 – or the IRS would not issue them $500 per child EIPs this year.**[6]

Four days later, on April 24, 2020, the IRS announced that recipients of SSI and Veterans Benefits **would have less than 11 days – until May 5, 2020 – to register their dependent children on the non-filer tool, or they would not receive dependent EIPs in 2020.**[7]

---

[5] Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 116-136 (March 27, 2020); *see also* 166 Cong. Rec. S1968 (daily ed. Mar. 23, 2020).

[6] I.R.S. News Release IR-2020-76, *SSA, RRB Recipients with Eligible Children Need to Act by Wednesday to Quickly Add Money to their Automatic Economic Impact Payment; IRS Asks for Help in the "Plus 500 Push"* (April 20, 2020), https://www.irs.gov/newsroom/ssa-rrb-recipients-with-eligible-children-need-to-act-by-wednesday-to-quickly-add-money-to-their-automatic-economic-impact-payment-irs-asks-for-help-in-the-plus-500-push [https://perma.cc/B3JW-D7LX] [hereinafter "April 20 IRS Alert"]; Press Release, U.S. Dep't of Treasury, *Action Needed for Social Security Recipients with Dependents Who Do Not File Tax Returns to Receive $500 Per Child Payment* (April 20, 2020), https://home.treasury.gov/news/press-releases/sm985 [https://perma.cc/7PNJ-T6T5] [hereinafter "April 20 Treasury Alert"].

[7] I.R.S. News Release IR-2020-81, *VA, SSI Recipients with Eligible Children Need to Act by May 5 to Quickly add Money to their Automatic Economic Impact Payment; 'Plus $500 Push' Continues* (Apr. 24, 2020), https://www.irs.gov/newsroom/va-ssi-recipients-with-eligible-children-need-to-act-by-may-5-to-quickly-add-money-to-their-automatic-economic-impact-payment-plus-500-push-continues [https://perma.cc/W8Y3-HAQ8] [hereinafter "April 24 IRS

Defendants have held firm to their policy: they have not allowed Plaintiffs or other SSA or RRB beneficiaries to register their dependent children on the non-filer tool after noon on the arbitrarily set April 22, 2020 deadline; they also have not allowed SSI or Veterans Benefit recipients to register their dependent children on the non-filer tool after the arbitrarily set May 5, 2020 deadline. As a result, Plaintiffs and an estimated 250,000-450,000 non-filing federal beneficiaries like them are unable to receive urgently needed relief funds for their children.[8]

Plaintiffs seek a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure to simply require Defendants to change these unreasonably set deadlines and allow Plaintiffs and other individuals who receive SSA, RRB, SSI and Veterans Benefits a pathway to register for the $500 per child, EIPs to which they indisputably are entitled under the CARES Act. The Taxpayer Advocate Service ("TAS"),[9] an independent arm of the IRS, recommends that the IRS allow these individuals a pathway to seek dependent EIPs this year.[10] Specifically, as set forth in the attached proposed order, Plaintiffs request that the Court order Defendants to: (1) immediately (within three days of an order from this Court) allow federal benefit recipients with dependent children to access the "Non-Filers: Enter Payment Info Here" tool, or another reasonable tool or application process, allowing federal benefit recipients to apply for EIPs of $500 per eligible child dependent for a period of time ending on the later of December 1, 2020 or

---

Alert"].

[8] Karen Bannan and Gabriel Zucker, *Waiting for a Check that Never Came*, NEW AM. (July 8, 2020), https://www.newamerica.org/public-interest-technology/blog/waiting-check-never-came/ [https://perma.cc/7TC9-HG5B].

[9] *The Taxpayer Advocate Service is Your Voice at the IRS*, IRS, https://www.irs.gov/advocate/the-taxpayer-advocate-service-is-your-voice-at-the-irs [https://perma.cc/Z9EC-H24N].

[10] NAT'L TAXPAYER ADVOC., OBJECTIVES REPORT TO CONGRESS FISCAL YEAR 2021 at 54 (2020) https://taxpayeradvocate.irs.gov/Media/Default/Documents/2021-JRC/JRC21_FullReport.pdf [https://perma.cc/JP87-WDZE]; *see also* ABA Tax Section, *Recommendations Regarding the Implementation of Various Tax-Related Provisions of the CARES Act* (May 12, 2020).

45 days from such time as this court grants relief; (2) to immediately (within 3 days of an order from this Court) allow federal benefits recipients with dependent children to apply for the EIPs of $500 per eligible child dependent to which they are entitled in a manner that is accessible to federal benefits recipients, including benefits recipients with limited computer access and/or intellectual, cognitive, behavioral health, or learning disabilities; and (3) to allow and make EIPs of $500 per eligible child dependent to eligible federal benefits recipients who file a processable claim as rapidly as possible and within a reasonable time.

The need for this relief is both immediate and urgent. The dependent child payments were designed to alleviate serious economic hardships that poor people with children, like Plaintiffs, face as a result of the pandemic, including food and housing insecurity resulting from markedly increased pandemic prices. Congress directed Defendants to provide these emergency relief payments by no later than December 31, 2020. If this issue is not resolved immediately Plaintiffs will not receive the emergency relief Congress intended and some individuals, including Plaintiff Rodriguez, may lose their right to these relief payments altogether. Defendants' unlawful decision to arbitrarily cut-off this economic lifeline to American children has caused, and will continue to cause, irreparable harm to Plaintiffs and millions of other American families.

## II. <u>STATEMENT OF FACTS</u>

The COVID-19 pandemic has created an unprecedented public health and economic crisis. Well over three million Americans became sick and over a hundred and thirty thousand people have died between mid-March 2020 and mid-July 2020.[11] Prices for food and necessary

---

[11] *Coronavirus Disease 2019 (COVID-19) – Cases and Deaths in U.S.*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/us-cases-deaths.html [https://perma.cc/UW82-MYNZ]; *The COVID Tracking Project*, ATLANTIC, https://covidtracking.com/ [https://perma.cc/HNV2-QVTJ].

household goods like soap and toilet paper skyrocketed due to increased demand and supply chain disruptions.[12]

A.    **Congress Passes the CARES Act Authorizing Immediate Relief Payments**

Congress authorized immediate means-tested financial assistance, termed EIPs, of up to $1,200 per adult and $500 per dependent child under age 17 to millions of American households via the CARES Act. This Act employs the federal tax infrastructure to provide financial assistance to eligible families, authorizing the immediate issuance of cash payments in the form of EIPs, using the nominal fiction of a "recovery rebate" or advance tax credit for eligible households. *See* 26 U.S.C. § 6428.[13]

Congress directed Defendants to pay EIPs during 2020 "as rapidly as possible." *Id.* § 6428(f)(3)(A). By *rapid*, Congress meant within weeks or months—not years. Senator Majority Leader Mitch McConnell indicated that the purpose of the CARES Act was to "rush financial assistance to Americans through direct checks to households from the middle class on down."[14] Senator Michael Rounds stated that he expected the public to receive EIPs, including the "$500 for every child in a family" as soon as possible, ***"not a month and a half or two months from***

---

[12] *See Food at Home Prices up, Gasoline and Airfare Prices down, over the Year Ended April 2020*, U.S. BUREAU OF LABOR STATS. (May 15, 2020), https://www.bls.gov/opub/ted/2020/food-at-home-prices-up-gasoline-and-airfare-prices-down-over-the-year-ended-april-2020.htm [https://perma.cc/JJ9J-SVMN]; *It's A Pandemic of the Food World: Grocery Prices on The Rise Across the Country*, CBS L.A. (May 16, 2020, 7:51 PM), https://losangeles.cbslocal.com/2020/05/16/grocery-prices-coronavirus/ [https://web.archive.org/web/20200710124144/https://losangeles.cbslocal.com/2020/05/16/grocery-prices-coronavirus/].

[13] To qualify, several conditions must be met. First, the tax filer's income must fall below a statutory threshold. 26 U.S.C. § 6428(c). Second, the adult must be "eligible," meaning not a dependent of another person and either a U.S. citizen or a resident alien. *Id.* §§ 6428(d), 7701(b). Third, individuals are entitled to a $500 dependent EIP for each qualifying child. *Id.* § 6428(a)(2). To qualify for the dependent EIP, the individual's child must be under age seventeen, among other requirements. *Id.* § 24(c).

[14] 166 CONG. REC. S2007 (daily ed. Mar. 24, 2020) (statement of Sen. McConnell).

*now.*"[15] Many Congressional leaders expressed deep concern when they learned that Defendants implemented a plan that would delay dependent EIPs for many people until next year, emphasizing that they wanted Americans to receive these benefits before the end of 2020.[16]

**B.      Defendants Imposed Unreasonably Short Windows for Plaintiffs to Register their Dependent Children for EIP Payments**

Soon after the CARES Act passed, the IRS announced that it would make automated payments to households that filed federal income tax returns in 2018 or 2019.[17] That plan was problematic because many Americans – like Plaintiffs – are not required to file federal income tax returns because they have little or no taxable income.[18] "Non-filers" include many recipients of Social Security or other federal retirement and disability benefits who, as a population, are having particular difficulty making ends meet during this unprecedented crisis.[19]

Members of Congress and advocates for individuals with disabilities and older adults urged the IRS to make payments automatically to non-filer households whose income is "known" to federal agencies because they receive federal benefits. The IRS initially refused,

---

[15] 166 CONG. REC. S1968 (daily ed. Mar. 23, 2020) (statement of Sen. Rounds) (emphasis added).

[16] Letter from Sen. Hassan et al. to the Sec'y of the Treasury and Comm'r of IRS (April 23, 2020), https://www.hassan.senate.gov/imo/media/doc/Hassan-Brown-Bennet-Booker%20Soc%20Sec%20dependent%20payments%20letter%20042320.pdf [https://perma.cc/A4AX-YD2Z] [hereinafter "Hassan Letter"]; Press Release, Rep. Matt Cartwright, *Cartwright Advocates to Eliminate Barriers to Full COVID-19 Cash Payments for Seniors with Dependents* (Apr. 23, 2020), https://cartwright.house.gov/media-center/press-releases/cartwright-advocates-to-eliminate-barriers-to-full-covid-19-cash [https://perma.cc/3AZS-WTBU].

[17] I.R.S. News Release IR-2020-61, *Economic Impact Payments: What you need to know* (Mar. 30, 2020), https://www.irs.gov/newsroom/economic-impact-payments-what-you-need-to-know [https://perma.cc/9BZG-8YBY].

[18] Congress authorized the IRS to pay EIPs even to individuals who had not filed a 2019 or 2018 tax return. *See* 26 U.S.C. § 6428(f)(5).

[19] *See* Joshua Rosenberg, *IRS Head Seeks Tax Pros' Help in Virus Payment Distribution*, LAW360 (Apr. 6, 2020, 7:34 PM), https://www.law360.com/articles/1260866 [https://perma.cc/XJK6-JSB6].

stating that all non-filer federal benefit recipients would be required to use an online non-filer tool it was creating.[20]

After considerable pressure from Congress and disability and taxpayer advocates, the IRS and the Treasury Department announced that the IRS would make automatic $1,200 stimulus payments to many federal benefits recipients, meaning they did not need to file an application to receive these payments. On April 1, 2020, the IRS and the Treasury Department announced that SSA and RRB recipients would receive automatic payments.[21] On April 15, 2020, the IRS and the Treasury Department announced that SSI recipients would also receive automatic payments.[22] Soon after, the IRS, Treasury and the Department of Veterans Affairs announced

---

[20] *See* I.R.S. News Release IR-2020-61, *Economic Impact Payments: What You Need to Know* (Mar. 30, 2020), https://web.archive.org/web/20200331023905/https://www.irs.gov/newsroom/economic-impact-payments-what-you-need-to-know ("People who typically do not file a tax return will need to file a simple tax return to receive an economic impact payment."); Justin Elliott and Paul Kiel, *Millions of Americans Might Not Get Stimulus Checks. Some Might Be Tricked Into Paying TurboTax To Get Theirs*, PROPUBLICA (Apr. 15, 2020), https://www.propublica.org/article/millions-of-americans-might-not-get-stimulus-checks-some-might-be-tricked-into-paying-turbotax-to-get-theirs [https://perma.cc/9A9A-NMLZ].

[21] *See* Press Release, U.S. Dep't of Treasury, *Social Security Recipients Will Automatically Receive Economic Impact Payments* (Apr. 1, 2020), https://home.treasury.gov/news/press-releases/sm967 [https://perma.cc/9PTD-MZHX]; *see also*, Michelle Singletary, *A Timeline of IRS Stimulus Payment Glitches*, WASH. POST (May 4, 2020), https://www.washingtonpost.com/business/2020/05/04/timeline-irs-stimulus-payment-glitches/ [https://perma.cc/2ZL3-M7AV].

[22] I.R.S. News Release IR-2020-73, *Supplemental Security Income Recipients Will Receive Automatic Economic Impact Payments; Step Follows Work Between Treasury, IRS, Social Security Administration* (Apr. 15, 2020), https://www.irs.gov/newsroom/supplemental-security-income-recipients-will-receive-automatic-economic-impact-payments-step-follows-work-between-treasury-irs-social-security-administration [https://perma.cc/CT43-DWG5]; Press Release, U.S. Dep't of Treasury, *Supplemental Security Income Recipients Will Receive Automatic COVID-19 Economic Impact Payments* (Apr. 15, 2020), https://home.treasury.gov/news/press-releases/sm979 [https://perma.cc/STC6-7TFH]; *see generally,* Arthur Delaney, *SSI Recipients Will Now Get Coronavirus Payments Automatically*, HUFFINGTON POST (Apr. 15, 2020, 2:34 PM), https://www.huffpost.com/entry/ssi-recipients-coronavirus-payments-automatically_n_5e974a33c5b65eae709e167c [https://perma.cc/89E2-H84B].

that recipients of veteran disability benefits would also receive stimulus payments automatically.[23] Although Defendants agreed to issue stimulus benefits automatically to non-filers who were known to the government based on their receipt of federal benefits, the IRS launched an online "non-filer tool" on April 10, 2020.[24]

Around 4:00 p.m. ten days later, on April 20, 2020, the IRS and the Treasury Department abruptly issued companion press releases announcing that in order for non-filing SSA or RRB beneficiaries to receive the $500 EIPs for their eligible dependent children this year, they would need to comply with an outrageously short deadline: **they had roughly 40 hours – until noon April 22, 2020 –** to fill out the non-filer tool which was available only on the internet.[25]

Specifically, the press releases stated that SSA and RRB beneficiaries had to complete an application on the non-filer tool so that IRS could add or "plus" the $500 per dependent payment to their individual automatic $1,200 stimulus payment.[26] According to the releases, once an individual's automatic $1,200 payment was issued, non-filer beneficiaries would no longer be eligible to access the non-filer tool. The IRS erroneously claimed that "by law" beneficiaries who failed to complete the online form for their children in time would have to seek the $500 dependent payments when they filed their 2020 tax returns.[27] In effect, Defendants claimed they were prohibited from issuing dependent child payments separately to federal beneficiaries in the form of supplement dependent EIPs – which is not, in fact, the law. And, of course, requiring

---

[23] Press Release, U.S. Dep't of Veterans Affs., *VA Partners with Treasury Department to Deliver Economic Impact Payments to Veterans and Survivors* (Apr. 17, 2020), https://www.va.gov/opa/pressrel/pressrelease.cfm?id=5423 [https://perma.cc/8JXU-EMY5].
[24] I.R.S. News Release IR-2020-69, *Treasury, IRS Launch New Tool to Help Non-Filers Register for Economic Impact Payments* (Apr. 10, 2020), https://www.irs.gov/newsroom/treasury-irs-launch-new-tool-to-help-non-filers-register-for-economic-impact-payments [https://perma.cc/K58G-M6YP].
[25] April 20 IRS Alert; April 20 Treasury Alert
[26] April 20 IRS Alert; April 20 Treasury Alert.
[27] April 20 IRS Alert; April 20 Treasury Alert.

non-filers, who generally do not submit tax returns, to submit a 2020 tax form creates additional hurdles for them next year.

Defendants' press releases came as a complete surprise given Defendants' earlier announcement that non-filers would get their *entire* stimulus check automatically.[28] SSA and RRB non-filers did not receive any individualized notice of the deadline.

Many members of Congress objected that Defendants' policy to delay the receipt of dependent EIPs until 2021 unless federal beneficiary non-filers could use a tool in short window was contrary to the intent of the CARES Act. Forty Senators wrote to Defendants Mnuchin and Rettig expressing concern that Social Security beneficiaries with children would not receive their needed complete stimulus checks as a result of Defendants' unreasonably brief, less than two-day deadline.[29] These Senators noted their skepticism of the IRS's justification for the brief window, and urged Defendants to ensure that non-filers receive stimulus payments for their children "before next year."[30]

Congressman Matthew Cartwright wrote Secretary Mnuchin and Commissioner Rettig, criticizing Defendants' "decision to give Social Security and Railroad Retirement recipients less than two days' notice of a deadline to register any dependents" and noting that he expected that many eligible individuals would miss the hastily-set deadline due to lack of notice or access to appropriate technology.[31] Rep. Cartwright also took issue with Defendants' proposed remedy,

---

[28] *See, e.g.*, Declaration of Barbara Butterfield ¶ 14 ("Butterfield Decl."); Declaration of Anna Brickman ¶¶ 15-18 ("Brickman Decl.") (noting the Legal Director of Face to Face announced that federal beneficiary non-filers would not have to take any action and would receive complete payments automatically based on Defendants communications prior to April 20).
[29] *See* Hassan Letter.
[30] *Id.*
[31] Press Release, Rep. Matt Cartwright, *Cartwright Advocates to Eliminate Barriers to Full COVID-19 Cash Payments for Seniors with Dependents* (Apr. 23, 2020), https://cartwright.house.gov/media-center/press-releases/cartwright-advocates-to-eliminate-barriers-to-full-covid-19-cash [https://perma.cc/8GNM-XQKQ].

the requirement that non-filers file taxes in 2021, noting that "[m]aking any portion of the Economic Impact Payment contingent on the filing of a 2020 tax return is problematic" because this will delay benefits to a group that is already "uniquely vulnerable to the health and economic consequences of COVID-19."[32] Rep. Cartwright further explained that asking non-filers to undertake the burden of filing tax returns is "unnecessary" and "runs counter to Congressional intent;" he also reminded Defendants that when a similar action was taken related to the 2008 stimulus payments it resulted in "3.5 million Social Security recipients and veterans never receiving the stimulus payment they were owed."[33]

Despite these reprimands, on April 24, 2020, the IRS announced, again via press release, that recipients of SSI and Veterans benefits would have **less than 11 days – until May 5, 2020 –** to use the non-filer tool to register their dependent children or they too would not receive dependent EIP payments in 2020.[34] Again, this press release indicated that non-filers who missed the May 5 deadline would "**not** be eligible to use the non-filers tool to add eligible children . . . and, **by law**, the additional $500 per eligible child amount would be paid in association with a return filing for tax year 2020."[35] The IRS issued a second press release on May 1, 2020 that repeated this information.[36] SSI and Veteran Beneficiary non-filers did not receive any

---

[32] *Id.*

[33] *Id.*

[34] April 24 IRS Alert

[35] *Id.* (emphasis added)

[36] I.R.S. News Release IR-2020-86, *VA, SSI Recipients with Eligible Children Need to Act by Tuesday May 5 to Quickly Add Money to their Automatic Economic Impact Payments; 'Plus $500 Push' Continues* (May 1, 2020), https://www.irs.gov/newsroom/va-ssi-recipients-with-eligible-children-need-to-act-by-tuesday-may-5-to-quickly-add-money-to-their-automatic-economic-impact-payment-plus-500-push-continues [https://perma.cc/P2HR-MLLE] [hereinafter "May 1 IRS Alert"]; *see, e.g.*, Lorie Konish, *There's a May 5 Stimulus Check Deadline if You're a Veteran or SSI Beneficiary with Kids*, CNBC (Apr. 25, 2020, 12:09 PM), https://www.cnbc.com/2020/04/25/new-stimulus-check-deadline-for-veteran-or-ssi-beneficiaries-with-kids.html [https://perma.cc/27XE-64GL]; *see also* Press Release, Sen. Susan Collins, *Supplemental Security Income, VA Beneficiaries Must Act By TOMORROW, May 5th, to*

individualized notice of the deadline.

> **C.**   **Hundreds of Thousands of People Who Are Entitled to EIPs for their Dependent Children Did Not Meet the Deadline to Register Dependents via the IRS's Complicated, Inaccessible, Confusing, Poorly Constructed and Ill-Publicized "Non-Filer Tool"**

Hundreds of thousands of federal beneficiary non-filers – estimated at between 250,000 and 450,000 people – were not able to meet the arbitrary April 22 and May 5 deadlines set by Defendants.[37]

First, without adequate notice, many people, including most Plaintiffs, were not aware of the deadline in time to register their dependents.[38] This is not surprising. Research from TAS, an independent organization within IRS, showed that members of vulnerable groups, including people with disabilities and seniors, have very limited access to the internet and thus often do not use it or do not know how to use it.[39] This research predicted that federal benefits recipients, who are largely older people or individuals with severe disabilities that prevent them from working, would miss tight deadlines announced almost exclusively over the internet.

Second, although the non-filer tool was described as "simple," in reality it was anything

---

*Receive Additional $500 Per Eligible Child* (May 4, 2020, 2:53 PM), https://www.collins.senate.gov/newsroom/supplemental-security-income-va-beneficiaries-must-act-tomorrow-may-5th-receive-additional [https://perma.cc/CE5N-Q74D].

[37] Karen Bannan and Gabriel Zucker, *Waiting for a Check that Never Came*, NEW AM. (July 8, 2020), https://www.newamerica.org/public-interest-technology/blog/waiting-check-never-came/ [https://perma.cc/7TC9-HG5B].

[38] Declaration of Willard McGruder ¶ 12 ("McGruder Decl."); Butterfield Decl. ¶¶ 15, 16; Declaration of Lily Valentin ¶¶ 9-10 ("Valentine Decl."); *see also* Brickman Decl. ¶ 18 (noting at least five families acknowledged missing the April 22 deadline to use the non-filer tool).

[39] TAS, A FURTHER EXPLORATION OF TAXPAYERS' VARYING ABILITIES AND ATTITUDES TOWARD IRS OPTIONS FOR FULFILLING COMMON TAXPAYER SERVICE NEEDS 63 (2017), https://taxpayeradvocate.irs.gov/Media/Default/Documents/ResearchStudies/ARC17_Volume2_04_ExplorationTP.pdf [https://perma.cc/U9FX-FWXJ] [hereinafter "TAS Taxpayer Abilities and Attitudes Report"]; *see also,* Monica Anderson & Andrew Perrin, *Disabled Americans are Less Likely to Use Technology*, PEW RES. CTR. (Apr. 7, 2017), https://www.pewresearch.org/fact-tank/2017/04/07/disabled-americans-are-less-likely-to-use-technology/ [https://perma.cc/95EX-887F] (stating that 23% of people with disabilities never go online).

but.[40] Tanisha Clanton, a benefits counselor at Project Home, a non-profit social services organization in Philadelphia, assisted approximately fifty non-filers in using the tool before May 5, 2020. She described the tool as "extremely challenging for many of [her] clients to complete."[41] Yvonne Perret, a social worker in Maryland who helped approximately 352 people with non-filer and EIP questions between April 27 and May 6, offered a similar description. She was "stunned by the assumptions inherent in this form" including assumptions that someone had internet access, was literate, and was comfortable completing online forms with "complicated tax language and concepts."[42]

Even though almost 50% of internet traffic occurs on cell phones, the IRS non-filer tool was not mobile enabled, meaning it does not work well on mobile devices.[43] Initially, the tool was only available in English.[44] It is now only available in English and Spanish—so people who speak other languages are unable to use it—and the Spanish version has been plagued with glitches.[45] The tool also incorporates sophisticated language and requires knowledge of tax concepts that are too complex for many people, especially people who are seniors or have severe disabilities.[46]

---

[40] *See* Declaration of Tanisha Clanton ("Clanton Decl.") ¶ 6, Declaration of Yvonne Perret ("Perret Decl.") ¶¶ 13, 17.

[41] Clanton Decl. ¶ 6.

[42] Perret Decl. ¶ 17.

[43] Letter from Consortium for Citizens with Disabilities (CCD) to Comm'r Rettig at 2 (June 2, 2020), http://www.c-c-d.org/fichiers/CCD-Letter-re-EIP-Portal-Issues_FINAL_6-2-20.pdf [https://perma.cc/PAG5-9TU4] [hereinafter "CCD Letter"].

[44] I.R.S. News Release IR-2020-83, *Use IRS Non-Filers: Enter Payment Info Here Tool to Get Economic Impact Payment; Many Low-Income, Homeless Qualify* (Apr. 28, 2020), https://www.irs.gov/newsroom/use-irs-non-filers-enter-payment-info-here-tool-to-get-economic-impact-payment-many-low-income-homeless-qualify [https://perma.cc/X556-YRPY] ("New Spanish language version unveiled").

[45] CCD Letter at 2.

[46] Perret Decl. ¶ 17; Declaration of Graham O'Neill ("O'Neill Decl.") ¶ 18 ("The IRS form was too complex to be independently usable by many of CWF's clients").

To complete the non-filer tool, individuals needed information that may not have been readily available to them, particularly during a pandemic. The tool requires an individual to have an email address, something that many individuals, particularly older individuals, do not possess.[47] Individuals who were trying to help beneficiaries complete the non-filer tool report that this was a significant obstacle.[48]

The non-filer tool also requests a personal identification number ("PIN") for historical filers.[49] Individuals with a history of being victims of identity theft, like Plaintiff DeMuro, are required to also provide a current Identity Protection PIN.[50] Absent that number, the online form was not accepted. Most services that could help individuals resolve PIN issues, including both the IRS customer service and identity theft hotlines, were not operational in late April or early May.[51] People who were unable to recover their PINs, including Ms. DeMuro, were unable to register their dependents on the non-filer tool even if they tried to complete it prior to the deadlines.[52]

The non-filer tool also requires information about the filer's 2018 adjusted gross income[53] and driver's license information including the issuance and expiration date. The form will not be accepted if the filer cannot provide that information.[54]

Asking people without many resources to complete this online form would be challenging in any circumstances, but it proved impossible for many during the pandemic. Due

---

[47] CCD Letter at 2; Clanton Decl. ¶ 7.
[48] *Id*. ¶ 7.
[49] Historical filers are people who filed tax returns for years prior to 2018. CCD Letter at 2; Clanton Decl. ¶ 13.
[50] CCD Letter at 2; Declaration of Deborah DeMuro ¶¶ 14, 19 ("DeMuro Decl.").
[51] Clanton Decl. ¶ 14; DeMuro Decl. ¶ 20.
[52] *Id.* ¶¶ 17-25; Clanton Decl. ¶ 16.
[53] CCD Letter at 2; Clanton Decl. ¶¶ 9-12.
[54] CCD Letter at 2.

to widespread shut-down orders, most public places where people could access free computers were closed; meaning those without computers had nowhere to go to complete the form.[55] Almost all other service providers, including tax assistance services, were also closed.[56] The IRS customer service line was not staffed, and IRS Taxpayer Assistance Centers were closed.[57] The AARP shut down its tax aid program throughout the U.S. during this period, ceasing provision of its usual tax assistance to seniors.[58] TAS, an independent organization within IRS, also had a policy in place to not accept any cases related to solely EIP issues.[59]

   In Philadelphia and the surrounding area, where the Plaintiffs reside, Campaign for Working Families ("CWF"), the largest low-income tax assistance program serving the area, was

---

[55] McGruder Decl. ¶ 17; *see also* Howard Pinder, *As COVID-19 Deepens the Digital Divide, a Call to Move Beyond Simply Providing Access*, TECHNICAL.LY (Apr. 27, 2020, 10:03 AM), https://technical.ly/philly/2020/04/27/as-covid-19-deepens-the-digital-divide-a-call-to-move-beyond-simply-providing-access/ [https://perma.cc/2M3H-JEJV] (documenting all 54 branches of Philadelphia's public library closed).

[56] Perret Decl. ¶ 9 (noting she was "overwhelmed by the need" for her volunteer assistance); O'Neill Decl. ¶¶ 6-13 (noting tax assistance service was extremely limited and hard to access); CCD Letter at 2-3.

[57] Kelsey Snell, *IRS Budget Cuts, Staffing Challenges Create Coronavirus Payment Headaches,* N.P.R. (Apr. 9, 2020, 5:00 AM), https://www.npr.org/2020/04/09/830159777/irs-budget-cuts-and-staffing-challenges-create-coronavirus-payment-headaches [https://perma.cc/489A-5HSC] (noting IRS web tools counsel people to "not call" with problems related to EIP payments); *IRS Operations During COVID-19: Mission-Critical Functions Continue*, IRS, https://www.irs.gov/newsroom/irs-operations-during-covid-19-mission-critical-functions-continue [https://perma.cc/B8KP-63KC] ("On Monday, June 29, 2020, the IRS began opening its Taxpayer Assistance Centers (TACs) to the public in phases.").

[58] *Due to Coronavirus Concerns, AARP Tax Aid, Other Programs Suspended*, AARP (March 16, 2020), https://states.aarp.org/missouri/due-to-coronavirus-concerns-aarp-tax-aide-other-programs-suspended [perma.cc/22CZ-CRY8] (noting Tax-Aide, the largest tax assistance service for seniors, was suspended across the country); *see also AARP Foundation Tax-Aide Now Offering Free Virtual Tax Services Amid COVID-19 Crisis*, AARP (June 15, 2020), https://press.aarp.org/2020-6-15-Tax-Aide-Offering-Virtual-Services-Amid-COVID19-Crisis [https://perma.cc/3EVE-5AX8] (establishing that AARP did not restore Tax Aide service until June, 15, long-after the deadlines for federal beneficiary non-filers).

[59] Bridget Roberts, *Memorandum for Taxpayer Advocate Service Employees*, TAXPAYER ADVOC. SERV. (May 14, 2020), https://www.irs.gov/pub/foia/ig/tas/tas-13-0520-0011-economic_impact_payments_and_tas_case_acceptance.pdf [https://perma.cc/RK6N-E8SR].

providing only remote tax assistance during Spring 2020 and only to very few people.[60] There is a very high bar to access virtual help from Volunteer Income Tax Assistance ("VITA") sites, like the CWF, due to IRS security requirements. To access a virtual VITA site, a person needs to have an Identification Document, their Social Security Number (SSN) card or a document from the SS Administration with their SSN on it, and technology that allows them to take and upload pictures.[61] Accordingly, it is unsurprising that CWF's virtual VITA service did not receive any requests to help with non-filer forms. Further limiting assistance to non-filers, some tax assisters refused to help complete the non-filer form because it does not allow the assister to disclose that they were completing the form on the filer's behalf.[62]

### D.      Defendants Continue to Refuse to Provide EIP Payments for Federal Beneficiaries

Despite the many difficulties inherent in the non-filer tool, Defendants continue to maintain their unsupportable position that SSA, RRB, SSI and Veterans Benefit recipient non-filers who missed the April 22 and May 5 deadlines, including Plaintiffs, are foreclosed from seeking dependent EIPs this year. Defendants are holding to their policy that Plaintiffs and other non-filers like them must instead file a 2020 tax return in the Spring of 2021 based on their and their dependents' 2020 eligibility (which may vary from their current eligibility).[63]

On May 5, 2020, IRS updated its website to reflect that the non-filer tool was now closed to federal beneficiary non-filers.[64]

On May 6, 2020, IRS Chief Counsel Michael Desmond stated that the IRS did not intend

---

[60] O'Neill Decl. ¶ 10.
[61] *Id.*
[62] CCD Letter at 3; *see also* Perret Decl. ¶ 14.
[63] Non-filers' eligibility for the EIP, paid in 2020, is based on 2019 information. 26 U.S.C. § 6428(f)(5)(B).
[64] *Non-Filers: Enter Payment Info Here*, IRS, https://www.irs.gov/coronavirus/non-filers-enter-payment-info-here [https://perma.cc/QH6V-EFLZ].

to publish regulations regarding the CARES Act, and that the press statements and information listed on the IRS website's FAQ section was the only information that the IRS intended to provide on most CARES Act issues, reaffirming that Defendants' prior statements outlined the Treasury Department and IRS's final positions.[65]

After the deadlines passed, the media began to report the fact that federal beneficiary non-filers were not receiving the $500 dependent EIP payments – even in circumstances where the dependents were timely registered on the non-filer tool.[66] In early June 2020, the IRS updated its website to acknowledge it was aware of this problem, and included instructions for those who "did not receive the full amount to which you believe you are entitled"[67] including "individuals who may be entitled to additional $500 per qualifying child payments."[68] The site states that the only way for non-filer federal beneficiaries to receive the $500 payment they are owed is to "claim the additional amount when you file your 2020 tax return."[69] This means that Plaintiffs and other beneficiaries like them will not receive needed emergency payments for their children until 2021.

### E. Defendants Have Injured Plaintiffs and other Low-Income Federal Beneficiaries By Refusing to Allow them to Receive EIPs For Their Dependent Children As Directed By Congress

---

[65] Alexis Gravely, *Most IRS Coronavirus Relief FAQs Won't Become Formal Guidance*, TAX NOTES (May 7, 2020), https://www.taxnotes.com/featured-news/most-irs-coronavirus-relief-faqs-wont-become-formal-guidance/2020/05/06/2chk3 [https://perma.cc/85KA-ESQP]; Tax Analysts, *Taxing Issues: Stimulus Measures to Date*, YOUTUBE (May 6, 2020), https://www.youtube.com/watch?v=qpPNm43tBCA [https://perma.cc/4NCK-Q6FA].

[66] Michelle Singletary, *A Timeline of IRS Stimulus Payment Glitches*, WASH. POST (May 4, 2020, 7:00 AM), https://www.washingtonpost.com/business/2020/05/04/timeline-irs-stimulus-payment-glitches/ [https://perma.cc/2ZL3-M7AV].

[67] *Economic Impact Payment Information Center – Q33: I think the amount of my Economic Impact Payment is incorrect. What can I do?* IRS, https://www.irs.gov/coronavirus/economic-impact-payment-information-center [https://perma.cc/JXM4-PLTW].

[68] *Id*.

[69] *Id.*

16

On June 25, 2020, the U.S. Government Accountability Office ("GAO") released a report indicating that the government had failed to pay 450,000 individuals their $500 dependent EIP payments for children registered on the non-filer tool from April 10 to May 17, 2020. The GAO Report states:

> According to IRS officials, from April 10 to May 17, 2020, payment calculations [for EIPs] did not include additional money for qualifying children claimed on returns submitted through the online non-filer tool. IRS officials estimate up to 450,000 recipients did not receive a payment that included additional money for their qualifying children.[70]

In other words, even those federal beneficiary non-filers who **did** use the non-filer tool in time, did not have the $500 per child dependent EIPs added to their automatic stimulus payments.

The following week, Defendant Rettig testified at a June 30, 2020 Senate Finance Committee hearing that the IRS would issue supplemental payments to those non-filers whose filings on the non-filer tool were not processed.[71] At that time, Defendant Rettig estimated that the IRS would be sending supplemental payments to 365,000 families.[72] This testimony appears to abandon Defendants' earlier assertion that issuing a supplemental dependent EIP was foreclosed "by law."

Even though Defendants are clearly permitted to issue supplemental dependent EIPs, Defendants have refused to create a pathway to allow federal beneficiary recipients who were unable to use the non-filer tool in time to get those supplemental payments even though they are entitled to receive them under the law.[73] On June 29, 2020, the National Taxpayer Advocate,

---

[70] U.S. GOV'T ACCOUNTABILITY OFF., GAO-20-625, COVID-19: OPPORTUNITIES TO IMPROVE FEDERAL RESPONSE AND RECOVERY EFFORT (June 25, 2020), gao.gov/reports/GAO-20-625/#TOC_Letter_Findings (emphasis added) [https://perma.cc/JG95-Z88Y] [hereinafter "GAO Report"].
[71] *2020 Filing Season and IRS COVID-19 Recovery: Hearing Before Senate Fin. Comm.* (June 30, 2020) (statement of Charles Rettig, Comm'r of the IRS).
[72] *Id.*
[73] *See 2020 Filing Season and IRS COVID-19 Recovery: Hearing Before Senate Fin. Comm.*

Erin Collins, noted in her Fiscal Year 2021 Objectives to Congress that, although the IRS had

been "concerned that once it issued individuals an EIP[, however incomplete], it did not have

authority or a process to issue additional amounts," it was the TAS's "understanding that there

are no legal constraints on the IRS's authority to issue additional EIP amounts in 2020; thus, the

decision to not do so is purely a business one."[74]

 After the close of the June 30, 2020 Senate Finance Committee Hearing, more than a

dozen Senators sent Defendants Mnuchin and Rettig a letter chastising them for failing to

"address those who were not able to meet [Defendants'] truncated deadlines to claim

dependents."[75] These senators urged Defendants Mnuchin and Rettig to provide supplemental

payments, noting that there is a "clear solution" to assist the "economically vulnerable families"

who were not able to meet the unreasonably tight deadlines.[76] The IRS had already announced it

would keep the non-filer tool open until October 15 for those who need to file through the tool

and did not receive automatic payments.[77] The Senators simply asked the IRS to allow

traditional non-filers with eligible dependents "equal time and opportunity" to access the non-

filer tool – until October 15, 2020 in order to claim their rightful dependent payments.[78]

 Defendants have refused to provide Plaintiffs and others like them this relatively short

amount of additional time to add their dependents to the IRS non-filer tool, or any alternative

pathway to receive these benefits in 2020.

---

(June 30, 2020) (statement of Charles Rettig, Comm'r of the IRS).

[74] TAS REPORT at 53.

[75] Letter from the Democratic Sens. of Sen. Fin. Comm. to the Sec'y of the Treasury and
Comm'r of IRS (June 30, 2020), https://www.cardin.senate.gov/imo/media/doc/Cardin-
Wyden%20Letter%20to%20Rettig%20on%20EIP%20dependents%20supplemental%20payment
s.pdf [https://perma.cc/ZMH8-4MPV] ("June 30 Sen. Fin. Comm. Letter").

[76] *Id.*

[77] *See* Rev. Proc. 2020-28, 2020-19 I.R.B. 781 (May 4, 2020), https://www.irs.gov/pub/irs-
irbs/irb20-19.pdf [https://perma.cc/6CCC-M9TT].

[78] June 30 Sen. Fin. Comm. Letter, *supra* n.75.

Plaintiffs have suffered and continue to suffer irreparable harm due to not promptly receiving the dependent EIPs that Congress intended would help them face rising prices and unexpected expenses due to the pandemic.[79] As discussed below, without dependent EIPs, Plaintiffs have not been able to pay for all of their food and necessities, which causes stress and compounds physical, mental health, and educational problems for families and children. Plaintiffs have had to make do without toilet paper and stop payment on bills for other essentials; they have risked utility shut-offs, financial penalties, and even eviction. Failure to provide access to essential benefits under the CARES Act has exacerbated an exceedingly stressful situation, in one case triggering a dependent's hospitalization. The harm caused by Defendants' conduct is undeniably irreparable.

### III.    ARGUMENT

Plaintiffs satisfy the well-settled standards that justify a preliminary injunction. Plaintiffs can demonstrate: (1) that they have a reasonable probability of success on the merits; (2) that they will be irreparably injured by denial of the relief requested; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party (Defendants) by being forced to allow Plaintiffs to receive the emergency relief payments to which they are entitled; and (4) that granting preliminary relief will be in the public interest. *See Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less in Penn Twp.*, 768 F.3d 300, 315 (3d Cir. 2014). In addition, bond should be waived because of Plaintiffs' financial hardship and because this suit is filed in the public interest.

### A.    Plaintiffs are Likely to Succeed on the Merits.

---

[79] Sharon Parrott et al., *More Relief Needed to Alleviate Hardship*, CTR. ON BUDGET & POL'Y PRIORITIES (July 21, 2020), https://www.cbpp.org/research/poverty-and-inequality/more-relief-needed-to-alleviate-hardship [https://perma.cc/87JU-DVJX].

Defendants' actions have violated four legal obligations: (1) their duties under the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*, not to act in an arbitrary and capricious manner; (2) the Due Process Clause of the Fifth Amendment to the U.S. Constitution; (3) the Fifth Amendment's Equal Protection Clause; and (4) their duties under the Rehabilitation Act, 29 U.S.C. § 794 (as amended). Plaintiffs are likely to succeed on each of these claims.

      1.      **Plaintiffs Are Likely to Succeed on the Merits of Their APA Claims Because Defendants' Action Denying Plaintiffs Access to Dependent EIPs Until 2021 Must be Set Aside as Arbitrary, Capricious, and Contrary to Law.**

Under the APA, a court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be, among other things, "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." 5 U.S.C. § 706(2).

      a.      **Defendants' Press Releases Announcing the Defendants' Final Decision to Deny Benefits are Final Agency Actions.**

The APA permits review of final agency actions. *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 247 (3d Cir. 2011). "Agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An action is final "if it both (1) mark[s] the consummation of the agency's decision-making process and (2) is one by which rights or obligations have been determined, or from which legal consequences will flow." *Smith v. Berryhill*, 139 S. Ct. 1765, 1775-76 (2019) (internal quotations omitted); *City of Phila. v. Sessions*, 280 F. Supp. 3d 579, 614 (E.D. Pa. 2017).

It is not the action's form, but its function, that determines its reviewability; regardless of whether the action is styled as a regulation, guidance, or an informal letter, "it is the impact and not the phrasing that matters." *W. Coal Traffic League v. United States*, 694 F.2d 378, 392 n.61

(5th Cir. 1982). In the Third Circuit, courts consider the following factors to determine whether

an agency action is final:

> 1) whether the decision represents the agency's definitive position on the question;
> 2) whether the decision has the status of law with the expectation of immediate
> compliance; 3) whether the decision has immediate impact on the day-to-day
> operations of the party seeking review; 4) whether the decision involves a pure
> question of law that does not require further factual development; and 5) whether
> immediate judicial review would speed enforcement of the relevant act.

*Ocean Cty. Landfill Corp. v. EPA*, 631 F.3d 652, 655 (3d Cir. 2011).

Defendants' decision to deny $500 per dependent benefits to Plaintiffs and other non-filer

federal beneficiaries if the IRS did not receive dependent information by the arbitrary, hastily set,

and ill-publicized April 22 and May 5 deadlines, requiring them to seek the $500 per eligible

child payment next year by filing 2020 taxes,[80] is a final agency action. IRS Chief Counsel

Michael Desmond has indicated that IRS does not intend to publish regulations regarding most

CARES Act issues.[81] The statements in IRS's website FAQ and press releases reflect all the

guidance it intends to provide Plaintiffs. The statement by IRS Chief Counsel, considering the

totality of the circumstances, has the effect of making these IRS communications final agency

actions. The decision announced in the alerts is the culmination of the agency's decision-making

process, and it has legal consequences for Plaintiffs and other non-filers who are eligible for

$500 emergency dependent EIPs.

---

[80] *See, e.g.*, April 20 Treasury Alert; April 20 IRS Alert; April 24 IRS Alert; *Economic Impact
Payment Information Center – Q33: I think the amount of my Economic Impact Payment is
incorrect. What can I do?*, IRS, https://www.irs.gov/coronavirus/economic-impact-payment-
information-center [https://perma.cc/JXM4-PLTW].
[81] Alexis Gravely, *Most IRS Coronavirus Relief FAQs Won't Become Formal Guidance*, TAX
NOTES (May 7, 2020), https://www.taxnotes.com/featured-news/most-irs-coronavirus-relief-
faqs-wont-become-formal-guidance/2020/05/06/2chk3 [https://perma.cc/85KA-ESQP]; Tax
Analysts, *Taxing Issues: Stimulus Measures to Date*, YOUTUBE (May 6,
2020), https://www.youtube.com/watcpPNm43tBCA [https://perma.cc/4NCK-Q6FA].

Defendants' statements about their policy employ mandatory language, noting that if the IRS does not receive required dependent information by the deadlines then "payments at this time *will* be $1,200" and "[recipients] will *not* be eligible to use the Non-Filer tool to add eligible children once their $1,200 payment has been issued."[82] This mandatory language makes clear that the Treasury Department and the IRS have conclusively decided that non-filing federal beneficiaries had to use the non-filer tool within the fleeting windows provided or wait until 2021 to receive their eligible child payments. *See W. Coal Traffic League*, 694 F.2d at 392 (describing repeated use of "will" as "sinews of command beneath the velvet words of the . . . guidelines.") (quoting *Am. Trucking Ass'ns, Inc. v. ICC*, 659 F.2d 452 (5th Cir. 1981)). The alerts "require[] an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached" if they failed to do so – a nearly yearlong delay in needed relief. *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

The finality of the Treasury Department's policy is reinforced by subsequent messages to federal beneficiary non-filers on the IRS website. After the May 5 deadline, the IRS updated their website for the non-filers form with the following: "the **window has closed** to use this tool for these recipients who have a child and don't normally file a tax return. These recipients who do not receive a payment that includes up to $500 for any qualifying children can file a tax return next year to determine their payment based on 2020 and claim any additional amount they weren't paid this year."[83] The IRS also updated its FAQ pages, noting that, for those who "did not receive the full amount to which you believe you are entitled," the remedy is that "you will

---

[82] April 20 Treasury Alert; April 20 IRS Alert; April 24 IRS Alert (emphasis added).
[83] *Non-Filers: Enter Payment Info Here*, IRS, https://www.irs.gov/coronavirus/non-filers-enter-payment-info-here [https://perma.cc/QH6V-EFLZ] (emphasis in original).

be able to claim the additional amount when you file your 2020 tax return." The IRS stated this advice is "particularly important for individuals who may be entitled to additional $500 per qualifying child payments."[84]

The finality of this decision is also reinforced by Commissioner Rettig's testimony. On June 30, 2020, Senator Hassan asked Commissioner Rettig directly whether the IRS would create a pathway for federal beneficiary non-filers who were unable to use the non-filer tool in time, to receive a supplemental payment in 2020—and Commissioner Rettig would not commit to changing the IRS's position.[85] His demurral reinforces that Defendants' position is final.

Defendants' position also has final legal consequences for Plaintiffs and others. Eligibility for the EIP based on tax year 2019 information is now foreclosed for non-filer federal beneficiaries. Because of Defendants' decision to close the non-filer tool to people in Plaintiffs' situation, some individuals will not receive a stimulus payment at all, and others will receive less in 2021 than they would have in 2020. For example, an individual with a dependent who turns 17 in 2020, like Plaintiff Rodriguez, will never receive that child's $500. Also, an individual who marries a noncitizen during 2020 will have to choose in 2020 between the stimulus payment and the tax benefits of filing a joint tax return.

The alerts' mandatory language, coupled with the lack of any indication that Defendants will reconsider this rule, issue individual exceptions, or exercise discretion not to apply this deadline, makes clear that the agency has "rendered its last word on the matter." *Whitman v. Am.*

---

[84] *Economic Impact Payment Information Center – Q33: I think the amount of my Economic Impact Payment is incorrect. What can I do?*, IRS, https://www.irs.gov/coronavirus/economic-impact-payment-information-center [https://perma.cc/JXM4-PLTW].

[85] *2020 Filing Season and IRS COVID-19 Recovery: Hearing Before Senate Fin. Comm.* (June 30, 2020) (statement of Charles Rettig, Comm'r of the IRS); *see also* June 30 Sen. Fin. Comm. Letter (acknowledging that the IRS refused to address the needs of people "who were not able to meet the truncated deadlines to claim dependents" and requesting the Defendants allow these traditional non-filers the ability to use the non-filer tool again).

*Trucking Ass'ns*, 531 U.S. 457, 478 (2001); *Minard Run Oil Co.* 670 F.3d at 248 (finding final "an agency determination of a particular issue that will not be reconsidered in subsequent agency proceedings"). Accordingly, the alerts are reviewable under 5 U.S.C. § 702(2).

      **b.**      **Defendants' Actions—Which Delayed EIP Dependent Benefits for Federal Beneficiary Non-Filers Who Could Not Use the Non-Filer Tool Until 2021—are Contrary to the Law.**

The position Defendants have taken, as spelled out in the alerts, is contrary to the CARES Act's command that the Treasury Secretary "*shall* . . . refund or credit any overpayment attributable to this section *as rapidly as possible*." 26 U.S.C. § 6428(f)(3)(A) (emphasis added). "Shall" indicates a nondiscretionary duty to act. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183,190 (D.D.C. 2016) (noting the statute at issue "uses the typically mandatory 'shall'" and Secretary of Health and Human Services had duty to act). "Rapid" is defined as "marked by a fast rate of motion, activity, succession, or occurrence."[86] Defendants' planned delay of payments to non-filer federal beneficiaries unable to meet exceedingly short deadlines is unlawful.

Immediacy was the Act's sine qua non. Congress expressly recognized the need for swift dissemination of funds so that Americans could continue to pay for necessities like housing, food, and prescription drugs:

- Senator Lankford explained EIPs were intended as a "stopgap method to help folks who are having trouble with their utilities or whatever it may be, or extra expenses so they will have something."[87]

- Representative Jayapal described the payments, including $500 per child, as "relief to the vast majority of everyday people to *immediately* put cash in people's pocket to pay those mounting bills."[88]

- Senator McConnell described the purpose of the CARES Act as to "rush financial assistance to Americans through direct checks to households from the middle class on

---

[86] *Rapid*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rapid [https://perma.cc/J6MN-PEQF].

[87] 166 CONG. REC. S1929 (daily ed., Mar. 23, 2020) (statement of Sen. Lankford).

[88] 166 CONG. REC. E339 (daily ed. Mar. 27, 2020) (statement of Rep. Jayapal) (emphasis added).

down."[89]

- Senator Rounds indicated that he expected the public to receive EIPs, describing the refundable tax credit, including the "$500 for every child in a family" as soon as possible, "*not a month and a half or two months from now*" and stressed that families "are hurting, and they need this additional assistance *at this time*."[90]

When lawmakers learned of Defendants' plan to require certain federal beneficiary non-filers to use the tool within two days or delay benefits until 2021, forty Senators immediately wrote to Defendants Mnuchin and Rettig, expressing concern that many non-filers would miss this window and requesting that Defendants ensure that these families would be able to receive their dependent stimulus benefits as quickly as possible, which they defined as "before next year."[91] Given Congress's intent as expressed in the CARES Act and their mandate to deliver EIP benefits "as rapidly as possible," along with the contemporaneous statements contextualizing its meaning, it is clear that the Defendants' extended timeline for delivering payments to individuals who missed the exceedingly short window to use the non-filer tool is an impermissible interpretation of the statute. *See Zheng v. Gonzales*, 422 F.3d 98, 120 (3d Cir. 2005).

> ### c.   Defendants' Actions to Delay EIP Dependent Benefits for Federal Beneficiary Non-Filers Who Could Not Use the Non-Filer Tool Until 2021 are Arbitrary and Capricious.

An agency action is "arbitrary and capricious" if it is not the product of "reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). The agency's action fails this test when the agency has failed to consider the relevant factors or made a "clear error of judgment." *Id*. at 43. Such an error occurs when the agency has

---

[89] 166 CONG. REC. S2007 (daily ed. Mar. 24, 2020) (statement of Sen. McConnell)
[90] 166 CONG. REC. S1968 (daily ed. Mar. 23, 2020) (statement of Senator Rounds) (emphasis added).
[91] Hassan Letter.

"relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *State Farm*, 463 U.S. at 43); *City of Phila.*, 280 F. Supp. 3d at 620-21.

Defendants' decision to cut-off funds as announced in their press releases are arbitrary and capricious because the Defendants' decision is not the "product of reasoned decisionmaking." *State Farm*, 463 U.S. at 52 (1983); *see also Dep't. of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1912-13 (2020) (discussing importance of "reasoned analysis" required by *State Farm*). It appears that Defendants did not consider *several* important aspects of the problem, mainly the well-known limitations of many federal beneficiary non-filers.

By definition, SSI recipients are low-income. SSDI recipients are also overwhelmingly low-income. They are also either older and/or have disabilities. Completing an online tax form in a truncated window presented predictable obstacles for this population because:

(1) Many lack access to computers and/or the internet;

(2) Many have disabilities, including cognitive limitations like traumatic brain injuries, intellectual disabilities (ID), learning disabilities and behavioral health impairments that make widespread use of this form unlikely without assistance;

(3) Many would not be able to learn of their obligation to file based non-individualized information communicated to them, collectively, via press releases; and

(4) Due to issues (1), (2), and (3) many would be unable to complete the non-filer tool process, in a very truncated window, when most institutions that provide access to computer and internet, and that provide assistance in completing government forms, are closed.

Defendants knew or should have known of the limitations of federal beneficiaries. Research from within the IRS itself, from 2017, shows that even among tax filers, eleven million "never use the Internet, with a minimum of at least six million in any one of the vulnerable groups (that is, seniors, taxpayers with disabilities, and low income taxpayers)."[92] Moreover, "*14 million taxpayers are unlikely to have Internet access at home*."[93]

Thus, Defendants' own research shows that taxpayers, particularly seniors and people with disabilities, frequently do not have access to the internet, especially at home – meaning Defendants knew that many would not be able to use an online portal *during a pandemic when people were ordered or encouraged to stay in their homes*. Non-filers, not captured by this research, are typically even more limited than filers in their access to and aptitude with technology. Thus, Defendants should have been aware that an online form would present serious obstacles for many non-filers, particularly during a period when many public access points for internet and computers were unavailable due to nationwide stay-at-home orders.[94]

Contrary to Defendants' own research that "any policy restricting access to only online tools would negatively affect these populations,"[95] Defendants created a tool that was exactly that: it was only available online, was provided without accommodations, and was available for only a short window of time when almost no assistance was available anywhere in the country,

---

[92] TAS, Abilities and Attitudes Report at 72-73 (emphasis added).
[93] *Id.* (emphasis added).
[94] *See* Howard Pinder, *As COVID-19 Deepens the Digital Divide, a Call to Move Beyond Simply Providing Access*, TECHNICAL.LY (Apr. 27, 2020, 10:03 AM), https://technical.ly/philly/2020/04/27/as-covid-19-deepens-the-digital-divide-a-call-to-move-beyond-simply-providing-access/ [https://perma.cc/2M3H-JEJV] (documenting all 54 branches of Philadelphia's public library closed). In fact, TAS concluded that because the use of the internet by vulnerable populations, including seniors and people with disabilities, "differ significantly from the general population" then "*any policy restricting access to only online tools would negatively affect these populations segments*." TAS, Abilities and Attitudes Report at 72-73 (emphasis added).
[95] TAS, Abilities and Attitudes Report at 73.

including from IRS customer service phone lines. The IRS's rationale for choosing this method is largely unexplained and unfounded.

Defendant Rettig suggested that swift use of the non-filer tool would allow IRS to add dependent payments to automatic stimulus payments being released to non-filers.[96] However, that is not a valid rationale: even those dependent EIPs which non-filer federal beneficiaries requested via the non-filer tool *before the deadlines* were not processed and consequently were not added to their automatic payments.[97] Defendants have provided no other explanation for the impractically short time period for using the non-filer tool, nor did they provide any alternatives for individuals who lack access to the internet or require a more accessible means of providing information. The only reasonable conclusion is that the agency "entirely failed to consider [those] important aspect[s] of the problem." *Dep't. of Homeland Sec.*, 140 S. Ct. at 1913 (citing *State Farm*, 462 U.S at 43).

While the agency's reason for providing an impossibly short window and inaccessible application method is a mystery, its initial reason for delaying further $500 payments until 2021 is simply false. The Defendants' alerts stated that this arbitrary choice is required "by law."[98] But there is no such law. On June 29, 2020, Erin Collins, the National Taxpayer Advocate, confirmed this in her report to Congress stating that it is TAS's "understanding that there are no legal

---

[96] *See* April 20 IRS Alert; April 20 Treasury Alert; April 24 IRS Alert; Kelly Phillips Erb, *IRS Says Payments on Their Way for Some*, *While Non-Filers Need to Add Children to Stimulus Checks*, FORBES (Apr. 20, 2020, 3:34 PM), https://www.forbes.com/sites/kellyphillipserb/2020/04/20/irs-sets-deadline-for-some-vets-seniors-and-other-non-filers-to-update-dependent-info-for-stimulus-checks/#258a08e9182f [https://perma.cc/HN89-FGZL].

[97] *See* GAO REPORT *supra* n. 70.

[98] *See* April 20 IRS Alert; April 20 Treasury Alert; April 24 IRS Alert. The April 20 IRS alert states, "For those who miss the April 22 deadline, their payment at this time will be $1,200 and, *by law*, the additional $500 per eligible child amount would be paid in association with a return filing for tax year 2020."

constraints on the IRS's authority to issue additional amounts in 2020; thus, the decision to do so

is purely a business one."[99] Defendant Rettig also testified that the IRS intends to send

supplemental dependent EIPs to some non-filers.[100]

The agency has not explained why its decisions are "appropriate" or "necessary to carry

out the purposes" of Congress's emergency relief statute; indeed, as discussed above, they are

not. Delaying dependent payments until 2021 is neither appropriate nor necessary, and

contravenes the express purpose of the CARES Act, which was intended to provide immediate

assistance to Plaintiffs and other recipients of dependent payments. To the extent that Defendants

have offered *any* explanation for their actions, the Court "cannot ignore the disconnect between

the decision made and the explanation given." *Dep't of Commerce v. New York*, 139 S. Ct. 2551,

2575 (2019). As the Supreme Court has recently emphasized, "[t]he reasoned explanation

requirement of administrative law . . . is meant to ensure that agencies offer genuine

justifications for important decisions." *Id.* at 2575-76. In this instance, the Defendants failed to

adhere to that requirement, so their actions must be set aside.

### d.  The Treasury Department via the IRS Has Wrongfully Withheld Or Unreasonably Delayed Dependent EIPs.

Plaintiffs are likely to succeed on their claim that Defendants' refusal to pay federal

beneficiaries who did not complete the online non-filer tool by the arbitrary deadlines violates

---

[99] NAT'L TAXPAYER ADVOC., OBJECTIVES REPORT TO CONGRESS FISCAL YEAR 2021 at 53 (2020) https://taxpayeradvocate.irs.gov/Media/Default/Documents/2021-JRC/JRC21_FullReport.pdf [https://perma.cc/JP87-WDZE]. Moreover, the CARES Act *permits* the IRS to avoid multiple credits or rebates to taxpayers where "appropriate" or "necessary to carry out the purposes of this section." 26 U.S.C. § 6428(h). This provision addresses concerns over duplicative payments and is not applicable to their situation. Nevertheless—even assuming *arguendo* that this section applies to multiple *payments* to non-filers—it certainly does not mandate "by law" that the IRS delay dependent payments until 2021.
[100] 2020 Filing Season and IRS COVID-19 Recovery, *Hearing Before Senate Fin. Comm.,* (June 30, 2020) (statement of Charles Rettig, Comm'r of the IRS).

Section 706(1) of the APA, because it amounts to a wrongful withholding or unreasonable delay

of the $500 per dependent EIP. A claim under Section 706(1) of the APA for unreasonable delay

requires "consideration of the particular facts and circumstances before the court." *Agua Caliente*

*Band of Cahuilla Indians v. Mnuchin*, No. 20-CV-01136 (APM), 2020 WL 2331774, at \*5

(D.D.C. May 11, 2020) (citing *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d

1094, 1100 (D.C. Cir. 2003)). In determining whether to grant relief in such a case, courts in the

Third Circuit employ a balancing test, which looks at four factors: (1) timing – the length of time

since the agency came under a duty to act; (2) context – the context of the statute authorizing the

agency's action; (3) harm – the consequences of the agencies' delay; and (4) agency interests –

any claim of error, inconvenience, or practical difficulty in carrying out the obligation.

*Prometheus Radio Project v. FCC*, 939 F.3d 567, 588 (3d Cir. 2019) (citing *Oil, Chem., &*

*Atomic Workers Union v. OSHA*, 145 F.3d 120, 123 (3d Cir. 1998)). Agency intent is not

considered. *Id.*

### i.    Defendants' Decision To Delay Dependent EIPs is Unreasonable and Counter to the Context and Purpose of the CARES Act (Factors 1 & 2)

The strong language of the CARES Act dictates that the first factor, concerning the

length of the delay at issue, weighs in favor of granting Plaintiffs the relief they seek. Delaying

payment to certain federal beneficiaries until they file a 2020 tax return is unreasonable because

it ignores the language in the CARES Act and Congress's intent to distribute the funds to

Americans "rapidly" – the language that provides the "rule of reason" here. As discussed above,

the IRS and Treasury Department's actions here do not meet that standard.

Congress's language and intent supply the ruler against which the Treasury Department's

delay must be measured, and the Department's progress issuing the $500 payment to federal

beneficiaries, which has been at a complete standstill since the April 22 and May 5 deadlines,

"simply doesn't measure up." *In re Pub. Employees for Envtl. Responsibility*, 957 F.3d 267, 274

(D.C. Cir. 2020) (holding agency failure to rule on applications for commercial tours of national

parks unreasonable); *see also Karimushan v. Chertoff*, No. 07-CV-2995, 2008 WL 2405729

(E.D. Pa. June 11, 2008) (finding a naturalization application was unreasonably delayed).

In a similar case concerning the Secretary's distribution of CARES Act funds to tribal

governments, the court held that a 50-day delay was egregious and warranted judicial

intervention. *Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-CV-01136 (APM),

2020 WL 3250701, at *2 (D.D.C. June 15, 2020). The same is true here: Defendants are

unilaterally withholding CARES Act funds when the statute does not grant them discretion to do

so. *Id.* Judicial intervention is warranted here as well.[101]

## ii.     Further Delay Will Prejudice Plaintiffs (Factor 3)

Plaintiffs face irreparable harm and will be severely prejudiced if they are required to

wait until 2021 to receive their dependent EIPs. This factor also weighs strongly in favor of

granting Plaintiffs the relief they seek because of the significant adverse impact that withholding

the payments will have on their health and welfare. Indeed, "[w]hen the public health may be at

stake, the agency must move expeditiously to consider and resolve the issues before it." *Agua*

*Caliente Band of Cahuilla Indians*, 2020 WL 2331774, at *7 (citing *Pub. Citizen Health*

*Research Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)); *see also Am.*

*Hosp. Ass'n*, 812 F.3d at 193 (instructing lower court that portions of the record showed the

---

[101] If for any reason the District Court is unable to conclude that the Treasury Department's delay is unreasonable, then it "may nevertheless retain jurisdiction over the case in order to monitor the agency's assurances that it is proceeding as diligently as possible with the resources available to it." *Mashpee Wampanoag Tribal Council, Inc*, 336 F.3d at 1102; *see also Agua Caliente Band of Cahuilla Indians*, 2020 WL 2331774, at *8 (requiring the Treasury Secretary to "file updates at regular intervals about the progress he is making towards paying" CARES Act funds to Tribal governments).

delays at issue impacted hospitals' ability and willingness to provide care and were "having a real impact on human health and welfare" and weighed in favor of granting mandamus relief).

The D.C. District Court recently recognized that "[t]he fast-moving spread of COVID-19 and the virus's potentially deadly consequences certainly demand prompt and diligent action." *Agua Caliente Band of Cahuilla Indians*, 2020 WL 2331774, at *7. Plaintiffs' need for the $500 EIP dependent care payment is no different from the payments due Tribal governments in that "[e]ach day that passes in which Plaintiffs have not received their full allotment of funds impairs their capacity to respond to the crisis." *Agua Caliente Band of Cahuilla Indians*, 2020 WL 3250701, at *3 (granting preliminary injunction and ordering "immediate disbursement" of CARES Act funds allocated to Tribal governments). Here, as in the final *Agua Caliente* opinion (2020 WL 3250701), Defendants have simply cut people off from obtaining the funds they are due, unilaterally determining that they can wait to receive payment.

The egregious decision to withhold the dependent care payments will impact Plaintiffs' (and other families') ability to make rent; pay utility bills that have gone up due to increased time at home; provide food when costs have gone up and certain resources like school lunches are unavailable; pay for essential medicines; and purchase items that have become newly necessary due to the pandemic, such as masks, disinfectants, and hand sanitizer. Worse, it will force families to choose among these necessities of life, perhaps foregoing food, necessary hygiene products like toilet paper, or housing expenses and utilities. In turn, these added expenses and the stress of being unable to meet them may exacerbate behavioral health symptoms.

Plaintiffs' declarations provide a detailed illustration of their irreparable harm:

- Due to the need to pay increased food prices in the pandemic, Plaintiff DeMuro and her son have had to go without necessary items, including toilet paper;[102]

---

[102] DeMuro Decl. ¶ 7

- Mr. McGruder had to cut out all fresh fruit and vegetables from his groceries because food prices have increased so much in his neighborhood;[103]

- Ms. Valentin cannot afford the food and necessities she and her daughter require due to the pandemic;[104]

- Ms. DeMuro reports that due to increased prices in the pandemic, she had to stop paying her bills, which may lead to utility cut-offs;[105]

- Ms. Rodriguez incurred extra expenses associated with helping her mother who was COVID-19 positive, and to secure her families safety.[106] She has not been able to pay their rent and is concerned they may face eviction.[107]

- Ms. Butterfield's granddaughter was expecting the dependent EIP and when it did not come it triggered a breakdown that required hospitalization.[108]

- Clients of Face to Face have had limited access to legal assistance with criminal expungements, housing issues, and procurement of vital documents, as Face to Face's legal staff had to divert its resources to helping explain EIP issues.[109]

### iii. Allowing Plaintiffs to Obtain EIPs This Year Will Not Adversely Impact Agency Priorities (Factor 4)

Allowing Plaintiffs and other federal beneficiaries the ability to seek and receive the $500 dependent EIPs will not adversely impact IRS or Treasury Department priorities. Defendants have not indicated that other agency priorities at the Treasury Department or the IRS will suffer if federal beneficiaries are paid the remaining portion of the EIP Congress authorized. Indeed, Defendants will not have to offer federal beneficiary non-filers access to anything that they are not currently offering to others. Defendants could choose to make these payments available by reopening the non-filer tool to non-filer federal beneficiaries and notably, ***that tool is currently***

---

[103] McGruder Decl. ¶¶ 7, 8.
[104] Valentin Decl. ¶¶ 5-6.
[105] DeMuro Decl. ¶ 12.
[106] Declaration of Carmen Rodriguez (Rodriguez Decl.) ¶ 5.
[107] *Id.* at ¶ 14.
[108] Butterfield Decl. ¶ 21.
[109] Brickman Decl. ¶ 8.

*available to other non-filers until October 15, 2020*.[110] Moreover, Commissioner Rettig

committed to swiftly issuing corrective payments to those federal beneficiary non-filers who *did*

use the non-filer tool, but have not received payment, hopefully by the end of July.[111] Thus, IRS

is already issuing supplemental payments to others.

2. **Plaintiffs Are Likely to Succeed on the Merits of Their Due Process Claim Because Defendants' Systemic Delay in Processing Dependent EIPs Violates the Due Process Rights of Plaintiffs Who are SSI and SSDI Beneficiaries.**

The Fifth Amendment to the U.S. Constitution guarantees that "[n]o person shall be . . .

deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V. To

state a claim for deprivation of a procedural due process interest, Plaintiffs must allege "(i)

deprivation of a protected liberty or property interest; (ii) by the government; [and] (iii) without

the process that is 'due' under the Fifth Amendment." *NB ex rel. Peacock v. District of

Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015).

a. **Plaintiffs' Interest in Receiving Their Dependent EIPs is a Property Interest Protected by the Due Process Clause.**

The dependent EIP stimulus payments to SSI and SSDI recipients are forms of "public

assistance" and "government benefits" provided to needy families. *See In re Hardy*, 787 F.3d

1189, 1190-91 (8th Cir. 2015) (holding child tax credit qualified as a "public assistance

benefit"). Applicants for government benefits have property interests in benefits when those

benefits, like the dependent EIPs, are nondiscretionary and statutorily mandated. *Cushman v.

Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009); *see also Marcello v. Regan*, 574 F. Supp. 586,

---

[110] June 30 Sen. Fin. Comm. Letter.

[111] *2020 Filing Season and IRS COVID-19 Recovery: Hearing Before Senate Fin. Comm.* (June 30, 2020) (statement of Charles Rettig, Comm'r of the IRS). Now that the IRS is presumably already issuing corrective payments to an estimated 365,000 non-filers who did not receive the child stimulus payment they registered for, they should be in a position to issue these payments for those who were unable to use the non-filer tool as well.

595 (D.R.I. 1983) (due process interest in refund seized by Aid to Families with Dependent

Children tax intercept program). The mere fact that Congress chose to deliver stimulus cash

assistance through the tax system does not negate the fact that dependent EIPs are a form of

public assistance. *See, e.g.*, *Flanery v. Mathison*, 289 B.R. 624, 628 (W.D. Ky. 2003)

(recognizing trend that refundable tax credits fall within the classification of public assistance

designed to combat poverty and are not merely tax refunds); *see also In re Vazquez*, 516 B.R.

523, 526 (Bankr. N.D. Ill. 2014) (holding child tax credits can be claimed as exempt public

assistance benefits).

The EIP has a unique statutory structure that creates an immediate property interest in its

receipt. The "recovery rebate" under Section 2201 of the CARES Act is a credit towards

payment of 2020 federal income tax, but this credit is reduced by the amount of the EIP received

in calendar year 2020. 26 U.S.C. § 6428(a), (d). To provide immediate benefits, the CARES Act

created the fiction that EIP recipients had overpaid their taxes with respect to the 2019 or 2018

tax year, based on information contained in their 2019 or 2018 tax return, or, in the case of

federal beneficiaries who were non-filers, based on information that the IRS has access to from

the SS Administration. *Id.* § 6428(f).[112]

In addition to creating an immediate right to receive the EIP, Congress created special

protections to ensure that people eligible under the CARES Act would receive the *full amount* of

the EIP. In contrast to situations concerning other refundable credits, Defendants are precluded

from offsetting an EIP against tax debts and other nontax federal obligations, with the sole

exception of child support. CARES Act § 2201(d). Also, there is no provision for recovery if the

---

[112] Also, the CARES Act directs the IRS to deliver the EIP "as rapidly as possible" and in no event after December 31, 2020. 26 U.S.C. § 6428(f)(3)(A). This stands in contrast to the earned income tax credit (EITC) and child tax credit, which may not be refunded before February 15 in any given tax filing season. 26 U.S.C. § 6402(m).

EIP paid this year is more than the taxpayer is entitled to receive based on their 2020 tax return. 26 U.S.C. § 6428(e)(1). Unlike other refundable credits, where the IRS has not been required to prospectively provide individualized notice, Plaintiffs had a definitive legal interest in their EIP.[113]

Plaintiffs' property interest in the EIPs arose when the CARES Act was passed on March 27, 2020. *See* Brief for United States of America as Amicus Curiae, *In re Smith*, No. 08-01664-AJM-7 at 3 (Bankr. S.D. Ind. Aug. 6, 2008), ECF No. 38 (government recognized that "[t]he right to claim a stimulus payment is indisputably a valuable property right . . . and the only issue should be *when* it arose. . . . The fact that is most crucial, and ought to be dispositive, for the stimulus payments is that the moment the Act was signed into law, every taxpayer who was able to qualify for the payment merely had to file a piece of paper (tax return) with the IRS to receive it."). The government distinguishes stimulus payments from ordinary tax refunds, stating: "the right to claim [the stimulus payment] arose on the date of enactment." *Id*. at 5. Accordingly, due process protections attached to Plaintiffs' interest in the EIPs, including for their dependents, on March 27, 2020 when the CARES Act became law.

While the Third Circuit has not explicitly weighed in on due process rights vis-à-vis stimulus benefits, for more than four decades it has maintained that due process obligations are

---

[113] While the pandemic is a unique circumstance creating unprecedented hardship, during the Great Recession, in 2008, courts likewise had an opportunity to consider the nature of the economic stimulus payments ("ESP"s) that Congress tasked the IRS to deliver under a prior version of Section 6428. While ESPs differed in some respects from EIPs (for example, they were not protected from IRS offset, they required individuals to have some earned income, and the IRS required all individuals who had previously been non-filers to file a tax return to receive the payment), Congress utilized the same fictional overpayment scheme to direct immediate calendar year 2008 payments to taxpayers through credits that were ultimately claimed on a 2008 tax return during the 2009 tax season. *See* Economic Stimulus Act of 2008, Pub. L. No. 110-185, 122 Stat. 613.

owed to persons with an expectation of eligibility or entitlement for income support programs, even before the income supports are awarded. *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 490 (3d Cir. 1980) (citing *Wright v. Califano*, 587 F.2d 345, 354 (7th Cir. 1978)). *See also Torres v. Chater*, 125 F. 3d 166, 169-70 (3d. Cir. 1997) (noting that applicants for disability benefits "are entitled to procedural due process"); *Alessi v. Pa. Dep't of Pub. Welfare*, 893 F. 2d 1444, 1452-53 (3d. Cir. 1990) ("This court has accorded procedural due process protection to applicants who did not have present enjoyment of a benefit, as have other federal courts."); *Littlefield v. Heckler*, 824 F.2d 242, 247 (3d. Cir. 1987) (applying a due process lens to a case concerning an applicant for disability benefits).

Third Circuit precedent is consistent with precedent in other circuits which have found that eligible persons retain due process rights to income supports and other public benefits, even before those benefits are awarded. *See, e.g., Kapps v. Wing*, 404 F.3d 105, 115 (2d Cir. 2005) ("Every circuit to address the question [of due process rights for applicants] has concluded that applicants for benefits, no less than current benefits recipients, may possess a property interest in the receipt of public welfare entitlements."); *Cushman*, 576 F.3d at 1297 (noting that "seven of our sister circuits have addressed similar questions concerning statutorily mandated benefits").

### b.       Defendants' Limited Notice Violates Due Process.

Defendants violated Plaintiffs' due process rights by failing to provide them with adequate notice of their obligation to use the non-filer tool to receive dependent EIPs. "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171-72 (1951) (Frankfurter, J., concurring)). The Third Circuit has held that the due process right to "adequate" notice of adverse actions in income support programs attaches to applicants as well as recipients

of the income supports. *See Ortiz v. Eichler*, 794 F.2d 889, 892-94 (3d Cir. 1986) (affirming

detailed notice requirements to applicants of a federal income support program under both the

Fourteenth Amendment to the U.S. Constitution and the controlling regulations).

Agencies typically inform people of a mass benefit change like this one by sending, at a

minimum, one individualized notice with the intended action, the reason, and any recourse or

appeal available. *See Garrett v. Puett*, 707 F.2d 930, 931 (6th Cir. 1983); *see also Atkins v.

Parker*, 472 U.S. 115, 131 (1985) (finding individual notices sent to every person accepted was

sufficient to meet due process).

Here, there was no individualized notice. Defendants simply issued alerts on the internet

that provided extremely truncated windows for Plaintiffs and other federal beneficiaries to act.[114]

This "notice" fell impossibly short of what is constitutionally required. Plaintiffs did not receive

constitutionally appropriate notice in this case, because under no circumstances is 40 hours to ten

days' notice, via press releases, sufficient to meet that burden.

## c. Defendants' Calculated Delay in Disbursing Dependent EIPs Violates Due Process.

"Due process requires that eligibility for a variety of benefits be processed within a

reasonable time." *Kraebel v. N.Y.C. Dep't of Hous. Pres. and Dev.*, 959 F.2d 395, 405 (2d Cir.

1992); *see also Schroeder v. Chicago*, 927 F.2d 957, 960 (7th Cir. 1991) ("The cases on

unreasonable delay are best understood as holding that implicit in the conferral of an entitlement

is a further entitlement, to receive the entitlement within a reasonable time."); *Kelly,* 625 F.2d at

489 (3d Cir. 1980) (delay in processing of disability payments can violate due

process); *Machado v. Leavitt*, 542 F. Supp. 2d 185, 194 (D. Mass. 2008) ("[S]ufficiently

egregious delay in processing or awarding an entitlement may constitute a remediable

---

[114] *See, e.g.*, April 20 IRS Alert; April 20 Treasury Alert; April 24 IRS Alert.

constitutional violation, even if the relevant statutory framework does not specify a timeline for agency action."). The Supreme Court has held that "a temporary, nonfinal deprivation of property" can be a constitutional "deprivation." *Fuentes v. Shevin,* 407 U.S. 67, 85 (1972). Agency delay can clearly be unreasonable despite the absence of a specific deadline. *Am. Hosp. Ass'n,* 812 F.3d at 190. Delays that might be reasonable in the context some of economic regulations, are less tolerable when, as here, human health and welfare are at stake. *Id.* at 189 (citing *Telecomm. Research. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)). The court in *Agua Caliente*, 2020 WL 3250701, at \*2, recently held that a 50-day delay withholding CARES Act funds was egregious and warranted judicial intervention. *Id.*

### d.   Plaintiffs' Due Process Rights Survive *Mathews v. Eldridge* Balancing.

The ultimate judgment as to how much process is due to the Plaintiffs is based on the balancing-of-interests test set forth by the U.S. Supreme Court in *Mathews v. Eldridge:*

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335 (*citing Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)). A review of the *Mathews* factors, incorporating the discussion above, shows that Plaintiffs are likely to succeed on the merits of their due process claim. Plaintiffs have property interests in the EIP dependent payments, to which they were erroneously deprived through improper notice and unreasonable delay, and they have significant risk, as the deprivation prevents Plaintiffs from buying the necessities of life for their children and grandchildren, including food, shelter, and personal items like toilet paper, which puts their health and personal safety at risk. Erroneous deprivation

precludes some individuals – *e.g.*, individuals with children who turn 17 in 2020, like Plaintiff Rodriguez – from ever receiving their dependent EIP payments at all.

The Defendants' interest in forgoing adequate notice and maintaining a calculated delay does not outweigh the Plaintiffs' rights and risk of harm. The relief requested will have minimal impact on Defendants given their undisputed willingness to keep the non-filer tool open for other non-filers through October 15, 2020 without restriction. It is further undermined by their decision to issue subsequent dependent EIPs to those federal benefits recipients who successfully managed to navigate the non-filer tool by the April 22 or May 5 deadline but did not then receive their EIP dependent payments. Because the Defendants' administrative considerations do not outweigh the Plaintiffs' rights and interests in timely dependent EIPs, the Plaintiffs are likely to prevail on their due process claim.

<b>3. <u>Plaintiffs Are Likely to Succeed on the Merits of Their Equal Protection Claim.</u></b>

Defendants have violated Plaintiffs' rights to equal protection of the laws under the Fifth Amendment of the United States Constitution by creating arbitrary distinctions based on receipt of particular federal benefits, when these distinctions significantly reduce Plaintiffs' access to the valuable dependent EIPs to which they are entitled, and serve no rational purpose.

The Equal Protection Clause of the Fourteenth Amendment provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." The principles of the Equal Protection Clause are applicable to the federal government. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). The purpose of the Equal Protection Clause is to protect "against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923)).

40

Differential treatment violates equal protection when it does not serve a rational purpose. *See Romer v. Evans*, 517 U.S. 620, 631 (1996) (classification must bear "a rational relation to some legitimate end"). When considering rationality, courts look at the goal of the underlying actions; a classification cannot be so attenuated to a given goal "as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 446 (1985) (citing *Zobel v. Williams*, 457 U.S. 55, 61-63 (1982); *U.S. Dept. of Agric. v. Moreno*, 413 U.S. 528, 535 (1973)); *United States v. Vaello-Madero*, 956 F.3d 12, 18 (1st Cir. 2020).

Here, Defendants converted non-filers into dissimilarly situated groups by distinguishing between them based on (1) whether they receive federal benefits and (2) what benefits they receive. Defendants used those classifications to provide very disparate treatment related to the IRS non-filer tool. Whether and what federal benefit you receive determined if you received forty hours to access the non-filer tool, ten days, or about six months. Consequently, those same distinctions were employed to create unequal access to dependent EIPs, because similarly situated non-filers have become or will become barred from seeking and receiving those benefits, in which they have a property interest, at different times in 2020.

These distinctions led to strange and irrational results. Based on Defendants' internal research, Mr. McGruder, a retired SSDI recipient, was particularly unlikely to have internet access to complete Defendants' online non-filer tool.[115] As of April 24, 2020, forty hours after he was directed to register on the tool via a press release – and only two weeks after the tool was launched at all – per Defendants' policy, he was no longer permitted to register for the $1,000 in dependent EIPs he is entitled to in 2020. Instead, at that point Defendants' policy dictated that Mr. McGruder would not be able to seek a stimulus benefit unless and until he, a non-filer, filed

---

[115] TAS, Abilities and Attitudes Report at 63.

taxes in 2021. On that same day, SSI non-filers, like Ms. DeMuro or Ms. Valentin, were still able to seek the same benefits through May 5, 2020. Other non-filers are permitted to access that same tool until October 15, 2020. As a result, similarly-situated individuals and groups lost access to dependent EIP payments in 2020 at different times and are subject to different delays. There is no reasoned rationale for making vast distinctions between non-filers.

If the purpose of asking various federal beneficiary non-filers to use the non-filer tool at staggered times was related to trying to include dependent payments with the automatic payments, Defendants' decision to subsequently bar those federal beneficiary non-filers from seeking dependent payments violates equal protection under *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) and its progeny. In *Logan*, plaintiffs challenged a state agency policy that dismissed employment discrimination claims based on when the hearing was scheduled, not on the merits of the claim. Under the challenged policy, two claims would be treated differently even if they were equally meritorious. *Id.* Six Justices held that granting or denying a property interest based upon nothing more than the timeliness of state administrative action violated equal protection. *Id.*

Defendants violated the Equal Protection Clause by creating a policy based on an arbitrary factor, receipt of different types of federal benefit. They then provided disparate access to EIPs based on that arbitrary factor that served no rational purpose related to the CARES Act. *See Logan,* 455 U.S. at 439 (holding that agencies may not draw arbitrary distinctions about individuals that are identically situated). Federal benefit status is plainly irrelevant to the purpose of the CARES Act, which sought to help remedy widespread suffering caused by the pandemic through cash assistance. The different deadlines imposed did not actually serve to allow receipt of dependent EIPs with the automatic EIP payments. Importantly, distinguishing among non-

filers in this way did not help individuals get their dependent payments more rapidly. Instead, Defendants divided non-filers using an arbitrary factor, which has mainly resulted in preventing between 250,000 to 450,000 people, including Plaintiffs, from seeking dependent stimulus benefits this year, while others, including other non-filers, still can.[116]

### 4. Plaintiffs Are Likely to Succeed on the Merits of Their Rehabilitation Act Claim.

Section 504 of the Rehabilitation Act of 1973 provides that:

No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or activity conducted by any Executive agency[.]

29 U.S.C. § 794. The individual Plaintiffs and many of Plaintiff Face to Face's clients are "individuals with a disability" as defined in 29 U.S.C. § 705(20) because each has a physical or mental disability that substantially limits one or more of his or her major life activities. Defendants the Treasury Department and the IRS are Executive Agencies.

The IRS is bound by regulations promulgated under Section 504 of the Rehabilitation Act, at 31 C.F.R. Part 17. These regulations require the IRS to "take appropriate steps to effectively communicate with . . . members of the public" and "furnish appropriate auxiliary aids where necessary to afford an individual with handicaps an equal opportunity to participate in, and enjoy the benefits of," its programs and activities. 31 C.F.R. § 17.160(a).

Defendants discriminated unlawfully against Plaintiffs by failing to communicate with them in an accessible format. Defendants failed to provide telephonic or other assistance to help recipients with disabilities complete the non-filer tool, effectively foreclosing receipt of EIPs for

---

[116] Karen Bannan and Gabriel Zucker, *Waiting for a Check that Never Came*, New Am. (July 8, 2020), https://www.newamerica.org/public-interest-technology/blog/waiting-check-never-came/ [https://perma.cc/7TC9-HG5B].

dependent children on the basis of the recipients' disabilities. Defendants' non-filer tool is only available online and uses sophisticated language, both of which makes it inaccessible to people with intellectual, cognitive, behavioral health, or learning disabilities.

**B.**     **Plaintiffs Are Likely to Suffer Irreparable Harm Absent the Requested Relief**

The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000). In this case, as described above, Plaintiffs are irreparably harmed by Defendants unduly delaying their access to critical, emergency, stimulus benefits in response to the COVID-19 pandemic.

Congress intended stimulus money, including benefits for dependent children, to offset the immediate and real financial strain families are shouldering due to unexpected mass stay-at home orders, school closures, and the rising costs related to food and services that resulted. No compensation with money damages, or future correction of errors, will address the violations Plaintiffs raised. *See Agua Caliente Band of Cahuilla Indians*, 2020 WL 3250701 at *3 ("Considering the public health challenges presented by the COVID-19 pandemic, the damage done by further delay cannot be fully cured by later remedial action.").

Multiple courts have found that for those citizens reliant on public benefits, a delay in receiving benefits, ***even on a temporary basis***, is considered irreparable harm. *See, e.g., Chu Drua Cha v. Noot*, 696 F.2d 594, 599 (8th Cir. 1982) ("We have no doubt that irreparable harm is occurring to the plaintiff class as each month passes . . . [even if the Eleventh Amendment would permit a court order requiring retroactive benefits payments, because] [f]or people at the economic margin of existence, the loss of $172 a month and perhaps some medical care cannot be made up by the later entry of a money judgment."), *modified on other grounds*, 701 F.2d 750

(8th Cir. 1983).

These rulings are consistent with judicial recognition that *any* reduction in subsistence benefits "may cause a real and imminent loss of food, shelter and other basic necessities imperative for the continuation of human existence." *Ellender v. Schweiker,* 550 F. Supp. 1348, 1358 (S.D.N.Y. 1982). When a family is living at a subsistence level, the subtraction of any benefit can make a significant difference to its budget and to its ability to survive. *See generally, Beno v. Shalala,* 30 F.3d 1057, 1063 n.10 (9th Cir. 1994) (summarizing cases that conclude that *any* reduction in government benefits can cause irreparable harm).

Plaintiffs Valentin, Rodriguez and DeMuro, as SSI recipients, by definition have very limited income and resources.[117] The monthly maximum SSI benefit that SSI recipients can receive in 2020 is $783 for an eligible individual, or $1,175 for an eligible individual with an eligible spouse.[118] These Plaintiffs, as residents of Pennsylvania, receive only slightly more through a state supplement which provides an additional $22.10 for an individual or $33.30 per couple.[119]

Plaintiffs McGruder and Butterfield are SSDI recipients, with Mr. McGruder supporting his two grandchildren on about $1500 a month, and Ms. Butterfield supporting her three grandchildren on about $3000 a month.[120] Delaying vital stimulus payments to help support their children and dependents until next year has already caused these families great harm, including going without nutritious food, personal necessities like toilet paper, electricity, water and

---

[117] Valentin Decl. ¶ 2; DeMuro Decl. ¶ 2.

[118] *Understanding Supplemental Security Income SSI General Information*, SSA, https://www.ssa.gov/ssi/text-general-ussi.htm [https://perma.cc/EY4U-DBC7].

[119] *Supplemental Handbook, App'x B,* Pa. Dep't of Public Welfare, (Feb. 1 2020), http://services.dpw.state.pa.us/oimpolicymanuals/supp/720_State_Supplementary_Payment/720_Appendix_B.htm [https://perma.cc/S7PM-PGPS].

[120] McGruder Decl. ¶ 4; Butterfield Decl.¶ 8.

clothing – all making a significant difference to their budgets and their lives. *See generally,*
*Beno*, 30 F.3d at 1063 n.10. Their harm is undeniably irreparable.

    **C.**    <u>**Defendants Will Not Be Harmed by Issuance of the Requested Injunctive**</u>
        <u>**Relief**</u>

        Defendants have not indicated that they will be harmed, or their other priorities will
suffer, if non-filing federal beneficiaries are paid the remaining portion of the EIPs they are
owed. On the contrary, payment of the remaining portion of the EIPs would be consistent with
the IRS mission which includes "applying the tax law with integrity and fairness to all," as well
as Defendant Rettig's written testimony to Congress where he confirmed that the IRS is working
to reach underserved communities and non-filers to ensure receipt of these payments. [121] An
order requiring Defendants to provide benefits for those federal beneficiary non-filers who were
unable to use the non-filer tool would further the broader IRS mission and align with the stated
purpose of Commissioner Rettig to reach underserved and non-filer communities.

        No business excuse the Defendants could come up with, be it computer or budgetary
problems, could tip the balance of equities in the Defendants' favor.[122] Congress specifically
appropriated funds to facilitate delivering EIPs. CARES Act § 2201(f). Government agencies are
required to comply with federal law *despite* budgetary problems. Multiple cases confirm that no
matter how pressing a governmental agency's budgetary burdens may be, cost considerations do
not allow governmental agencies to shirk their statutory duties. *See, e.g.*, *Beno*, 30 F.3d at 1069
n.30 (rejecting budget cutting as grounds for waiver of federal AFDC requirements); *Moore v.*
*Reese*, 637 F.3d 1220, 1259 (11th Cir. 2011) ("However pressing budgetary burdens may be, . . .

---

[121] 2020 Filing Season and IRS COVID-19 Recovery, Hearing Before Senate Fin. Comm., (June
30, 2020) (statement of Charles Rettig, Comm'r of the IRS at 3).
[122] TAS Abilities and Attitudes Report at 53 (confirming IRS's decision not to issue corrective
stimulus payments is a "business" decision).

cost considerations alone do not grant participating states a license to shirk their statutory duties under the Medicaid Act."); *see also Tallahassee Mem'l Reg'l Med. Ctr. v. Cook,* 109 F.3d 693, 704 (11th Cir. 1997).

**D.      The Public's Interest Will Be Served by the Issuance of Requested Relief**

The public interest will be served by issuance of injunctive relief that prevents Defendants from continuing to bar Plaintiffs from seeking dependent child stimulus benefits, to which they are entitled under the CARES Act.

As stated by the Ninth Circuit in *Lopez v. Heckler*: "It is not only the harm to the individuals involved that we must consider in assessing the public interest. Our society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges." 713 F.2d 1432, 1437 (9th Cir. 1983); *see also Wilson v. Heckler*, 622 F. Supp. 649, 655 (D.N.J. 1985) (holding "the public good strongly favors the issuance of an injunction ensuring that individuals who are disabled are not summarily denied by virtue of" the application of an arbitrary policy), *vacated in part on other grounds*, 796 F.2d 36 (3d Cir. 1987); *see also Agua Caliente Band of Cahuilla Indians*, 2020 WL 3250701, at *4 (finding the public interest favored ordering immediate disbursement of CARES Act funds). Accordingly, injunctive relief will serve the public interest.

**E.      Bond Should Be Waived**

The Court should not require Plaintiffs to post a bond as security for the preliminary injunction. As the Third Circuit has explained:

> [T]he First Circuit has articulated an appropriate analysis that a district court should employ in deciding whether or not to require a bond. *Crowley v. Local No. 82, Furniture & Piano*, 679 F.2d 978 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984). "First, at least in noncommercial cases, the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant." *Id.* at 1000. . . . The First Circuit also noted the special nature of suits to enforce important federal rights or "public

interests," arising "out of comprehensive federal health and welfare statutes." *Id*. A district court should consider the impact that a bond requirement would have on enforcement of such a right, in order to prevent undue restriction of it. *Id.*

*Temple Univ. v. White*, 941 F.2d 201, 219-20 (3d Cir. 1991). Here, the individual Plaintiffs are all SSI and SSDI recipients who have limited income. Plaintiff Face to Face is a nonprofit organization serving low-income individuals. In addition, Plaintiffs are bringing this suit in part to promote the public interest in ensuring federal beneficiary non-filers have access to the stimulus benefits to which they are entitled. Both the financial hardship and public interest at issue in this action point in favor of waiver of the bond requirement.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Injunction.


Dated:  July 31, 2020

Respectfully submitted,

 /s/ Ellen T. Noteware

Ellen T. Noteware, ID No. 82711
Caitlin G. Coslett, ID No. 306915
Phyllis M. Parker, ID No. 77336
Nicholas Urban, ID No. 307129
Michaela L. Wallin*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
enoteware@bm.net
ccoslett@bm.net
pparker@bm.net
nurban@bm.net
mwallin@bm.net

Jennifer Burdick, ID No. 306703
Kristen Dama, ID No. 207079
COMMUNITY LEGAL SERVICES, INC.

1424 Chestnut Street
Philadelphia, PA 19102
Telephone: (215) 981-3700
JBurdick@clsphila.org
KDama@clsphila.org

Christine Speidel, ID No. 325502
Leslie Book, ID No. 88566
VILLANOVA FEFERAL TAX CLINIC
299 North Spring Mill Road
Villanova, PA 19085
Telephone: (610) 519-4123
Chrisine.Speidel@law.villanova.edu
Book@law.villanova.edu

*Pro hac vice* to be filed.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of July, 2020, I electronically filed the foregoing

Memorandum of Law in Support of Plaintiffs' Motion For A Preliminary Injunction with the

Clerk of the Court using the CM/ECF system.

<u>/s/ Ellen Noteware</u>
Ellen Noteware

50